## VAN SANT v. AMERICAN EXPRESS CO.

### No. 3441.

District Court, E. D. Pennsylvania.

July 20, 1945.

T. Edward O'Connell and Thomas D. McBride, both of Philadelphia, Pa., for plaintiff.

Robert T. McCracken, C. Russell Phillips, and Richard E. McDevitt, all of Philadelphia, Pa., for defendant.

WATSON, District Judge.

This is a suit for damages resulting from an alleged willful, unjust and malicious prosecution and imprisonment of the plaintiff by the defendant. The case was tried before the court and a jury. After both parties had rested, and after hearing arguments of counsel on both sides, the court granted the defendant's point for binding instructions, and instructed the jury to find a verdict for the defendant. The case is now before the court on a motion by the plaintiff for a new trial.

The burden was upon the plaintiff to show want of probable cause for the criminal proceedings. If any criminal proceedings were instituted by the defendant they were instituted on March 12, 1941, when the Philadelphia representative of the defendant suggested that a warrant be issued for the arrest of the plaintiff and a warrant was sworn out by Detective Galen of the Philadelphia police.

It appears from the evidence that on January 2, 1941, a pad of American Express Company money orders was stolen from the Western Union Telegraph Office in Columbus, Ohio, all of them alike except that they were serially numbered. During

the ensuing weeks nearly all of these money orders appeared endorsed with the same signature, Relda Hardman, and in the same amount—$45. The defendant was informed by several persons, among them the Pittsburgh police, that a number of the money orders had appeared. The defendant was further informed by letter from the Pittsburgh police that Edna Frances Van Sant, the plaintiff here, was identified from her photograph by seven shop girls who had accepted the fraudulent money orders. This letter, including the picture so identified, was sent to the defendant under date of January 30, 1941. The defendant was further informed that on February 6, 1941, the Allegheny County Grand Jury returned a true bill against Frances Van Sant as the person who passed one of the money orders there. As to this proceeding in Allegheny County there is no evidence to show an abuse by the defendant of the plaintiff's rights, or any action at all by the defendant.

After receiving the above mentioned letter of January 30, 1941, from Inspector Monaghan of Pittsburgh advising the defendant that seven people had identified the picture of Edna Van Sant, the defendant received another letter from the same source, about the eighth of February, 1941, advising it that the photograph of the plaintiff had been "positively identified as the woman who passed the money orders" in Upper Darby, Pennsylvania. About February 10, 1941, a letter was received by the defendant from the Metropolitan Police Department of the District of Columbia stating that plaintiff's husband was arrested on a charge of passing a forged check. Following a suggestion contained in the letter, James J. Bulger, Inspector of defendant company, communicated with the sheriff of Frederick County, Maryland, requesting specimens of handwriting of the plaintiff. Bulger received information about the charge against plaintiff's husband and was told that though plaintiff was "apprehended" with her husband, "since there were no charges against her she was released immediately." Shortly after this letter was received, defendant received a telegram from the sheriff of Frederick County informing it of plaintiff's address in Baltimore.

On March 12, 1941, a warrant was sworn out for the arrest of the plaintiff by Detective Galen of the Philadelphia police at the order of Lieutenant Murphy on information received. On March 13, 1941, Bulger came to Philadelphia and he accompanied Detective Galen and a police woman of the Philadelphia police to Baltimore, in which city the plaintiff had been taken into custody by the authorities. Bulger, Galen, the policewoman, and the plaintiff all stopped at plaintiff's apartment to enable the plaintiff to pack her things and then left for Philadelphia, plaintiff having waived extradition. All fares for the trip were paid for by the defendant. Plaintiff was held at City Hall, and the following day, March 14, 1941, seven to ten people who had accepted the forged money orders were present at the request of the police. Of the seven or ten there were four who identified the plaintiff as the person who had passed the money orders.

With the foregoing evidence before the court, which was uncontradicted, the court, in directing the jury to render a verdict for the defendant, made the following statement to the jury:

"This Defendant had been reliably informed, which information was uncontradicted:

"1. That photographs of Frances Van Sant had been identified in January, 1941 by seven victims who cashed money orders, as being photographs of the person who passed the money orders, and that a warrant had been issued in Pittsburgh for her arrest. All of this was before the prosecution was started by this Defendant.

"2. That Frances Van Sant was identified from her photograph in Upper Darby, Pennsylvania, in February, 1941, as the woman who passed some of the American Express Company money orders of the same series and book as those passed in Pittsburgh.

"3. That, on February 6, 1941, a grand jury, at Pittsburgh, indicted Frances Van Sant for forgery of American Express money orders of the same series and book; and

"4. That Frances Van Sant and William Van Sant were arrested on October 29, 1940, in the District of Columbia, on a fugitive warrant. William Van Sant was charged with passing a United States Traveler's check in the amount of $20. on the Exchange National Bank of New York, a non-existing bank.

"All of that information was before this Defendant before any prosecution was started; and, of course, the question is whether that alone does not establish probable cause; and, is there anything in the case which could possibly convince you or convince anyone that this plaintiff has shown that there was a lack of probable cause?

"Therefore, under the law, there is no need for a finding by you as to the facts upon which the existence of probable cause is to be based; and it is the sole function of the trial judge to make this determination.

"That the plaintiff did not meet the burdent which was upon her to show want of probable cause for the criminal proceedings, I have no doubt; and further, I am of the opinion that, under the evidence, the Defendant did have probable cause for initiating these proceedings.

"If Frances Van Sant was innocent of the crimes with which she was charged, it is, to say the least, most unfortunate, and she has the sympathy of all right-thinking people. However, that is not the question here. The sole question at this time is whether or not the plaintiff showed by the evidence a lack of probable cause on the part of the defendant for instituting the criminal proceedings.

"As I have said, I have no doubt but that the plaintiff did fail to meet that burden. Therefore, I have but one choice. I am convinced that, for the reasons stated, and for other reasons, the evidence in this case will not support a verdict for the plaintiff, and that therefore it is my duty to direct you to render a verdict for the defendant; and you are now so directed."

The Court now feels that there was no error committed in directing the verdict for the defendant. Throughout the trial the court had before it the case of Campbell v. Yellow Cab Co., 3 Cir., 137 F.2d 918, where in the opinion by Maris, Circuit Judge, the questions of law involved in the present case are fully discussed.

· The Campbell v. Yellow Cab Company case was a suit to recover damages for malicious prosecution and false imprisonment. Judgment for plaintiff was reversed. The facts in my opinion presented considerably less basis for probable cause than in the case at bar.

On August 24, 1940, two men held up a taxicab owned by defendant and operated by its employee, Berry. Berry, in accordance with defendant's rules, paid over to defendant the amount of stolen fares and meter charges. He gave a description to the police, estimating the robber's age, height and weight, although he did not, at any time, see the taller of the robbers full face. On October 19, 1940, the police took the plaintiff into custody on suspicion. Berry went to the police station and identified the plaintiff. The following morning at the magistrate's court Berry once again identified him. According to plaintiff's testimony he was held for further hearing in response to a specific request by Hardy, defendant's investigator.

At the second hearing none of defendant's employees actively participated, but plaintiff was held without bail for court. On November 6, 1940, two other men confessed to the robbery and were convicted. At plaintiff's trial, November 12, 1940, Berry testified that he was mistaken in his identification and plaintiff was discharged. Judge Maris, in his opinion in 137 F.2d at page 922, stated:

"Where there is no conflict in the testimony as to the circumstances under which the deferidant acted in initiating the proceedings, or the circumstances are admitted by the parties or the evidence is clear and uncontradicted, there is no need for a finding of the jury as to the facts upon which the existence or nonexistence of probable cause is to be based. In such case it is the sole function of the trial judge to make this determination. Restatement of Torts, § 673, Comment g. This is clearly the law of Pennsylvania. In Robitzek v. Daum, 1908, 220 Pa. 61, at page 64, 69 A. 96, the court said: 'What is probable cause and whether it exists under an admitted or clearly established state of facts, is a question of law for the court.' In Taylor v. American I. Shipbuilding Corp., 1922, 275 Pa. 229, at page 231, 119 A. 130, it is said: 'It is exclusively for the jury to pass on testimony, but the court must say, as a matter of law, whether the facts proven show probable cause. Generally it is a mixed question of law and fact, and, where the facts are in dispute, they must be submitted to the jury, who should be instructed as to what facts constitute probable cause. But, if all the admitted facts, and the reasonable inferences therefrom, amount to

probable cause, the court must so declare and direct a verdict for defendant. * * *' In Taubman v. Schulte, 1931, 302 Pa. 170, 172, 153 A. 150, 151, the court said: 'Where, however, plaintiff's own testimony shows the existence of probable cause, this burden is lifted from defendant (Bernar v. Dunlap, 94 Pa. 329, 331; Cooper v. Wm. R. Hart & Co., 147 Pa. 594, 598, 23 A. 833; Taylor v. American International Shipbuilding Corp., 275 Pa. 229, 231, 119 A. 130), and it becomes the duty of the court to enter a nonsuit or to direct a verdict for defendant (Boyd v. Kerr, 216 Pa. 259, 65 A. 674).'

"That part of the evidence in the case before us which has any relevancy to the issue of probable cause is undisputed. As we have indicated, where the evidence is uncontroverted the question whether the defendant acted without probable cause is for the trial judge and not for the jury. Consequently the trial judge erred in submitting that question to the jury. The error would have been harmless, however, if the jury's finding that the defendant acted without probable cause was the finding which the trial judge should have made from the evidence. We shall, therefore, examine the evidence to determine whether it justifies a finding that Hardy acted without probable cause. The evidence is to the effect that when Hardy requested that the plaintiff be held he did so in reliance upon a positive identification by his fellow employee Berry, the only eye witness to the holdup. This was done in a proceeding before a magistrate at which Berry was a witness. That is all we have in the record upon this point. Bearing in mind that the burden of showing want of probable cause was upon the plaintiff, we have the narrow question whether establishment of the fact that Hardy furthered the prosecution of the plaintiff under these circumstances meets this burden.

■ "The law of Pennsylvania is that 'Representations of others may be sufficient foundation for it (probable cause), especially if made by those who have had opportunities for knowledge.' Taylor v. American I. Shipbuilding Corp., 1922, 275 Pa. 229, 231, 119 A. 130; Bernar v. Dunlap, 1880, 94 Pa. 329. · Compare Bunting v. Goldstein, 1925, 283 Pa. 356, 129 A. 99; Smith v. Ege, 1866, 52 Pa. 419. The decision in Bernar v. Dunlap, supra, seems very close to the facts of the instant case. In an action for malicious prosecution, the trial judge had non-suited the plaintiff and he appealed. In affirming the judgment below the court in its per curiam opinion said: 'The express and distinct statement of Curtis * * * gave probable cause. Nothing is shown proving that the statement was not honestly made by Curtis, and in entire good faith believed by the defendant.' This is a direct ruling by the Pennsylvania Supreme Court that a plaintiff in a malicious prosecution suit growing out of a situation analogous to the present one is not entitled to recover if he fails to show that the witness upon whom the defendant relied in instituting the prosecution was not acting honestly and that the defendant did not in good faith believe his identification. As we have already pointed out, there was no evidence in the present case from which the jury might have inferred that Berry was not honest in his identification or that Hardy did not accept that identification in good faith.

■ "It is argued that it must be held as a matter of law that Berry's opportunity for knowledge under the circumstances here present was not sufficient to enable him in good faith to make any identification of the robbers and that since Hardy must have known this he must be held to have acted without probable cause. As we have already indicated, the plaintiff failed to sustain the burden of showing how much Hardy knew of Berry's means of knowledge. Unless he did have knowledge of the circumstances it would not affect the reasonableness of his reliance upon Berry's identification. 'Where the accuser bases his charge upon a third person's identification of the accused, it is immaterial that the informant acted unreasonably in making the identification.' Restatement of Torts, § 662, Comment g. * * *

■ "We conclude that there was no evidence in this case from which a fact situation might be found which would justify a ruling by the court that Hardy acted without probable cause. It should be remembered that the interests of society require that a citizen who performs his duty in assisting the public authorities to apprehend and prosecute criminals shall not be penalized for a mere error in so doing. As was said in Gilliford v. Windel, 1884, 108 Pa. 142, 145, 'As it is the duty of every citizen to aid in enforcing the criminal laws of the state against those by whom

they are wilfully disobeyed, so is it the business of our courts of justice to see that the person thus undertaking to vindicate the law shall not suffer in consequence of such an attempt, even though it may have proved abortive.' See also introductory note to Chapter 29—Wrongful Prosecution of Criminal Proceedings—of the Restatement of Torts."

It should be observed that in Campbell v. Yellow Cab Co., supra, the uncontroverted evidence was to the effect that when Hardy requested that the plaintiff be held he did so in reliance upon a positive identification by his fellow employee, and that is all. In the instant case, the uncontroverted evidence is to the effect that the representative of the defendant, when he requested that the plaintiff be held had been informed by the police of Pittsburgh that Edna Frances Van Sant, the plaintiff here, had been identified from her photograph by seven shop girls who had accepted the fraudulent money orders, that he had also been informed that on February 6, 1941, the Allegheny County Grand Jury returned a true bill against Frances Van Sant as the person who passed one of the stolen money orders there, that he had also been informed by letter received from Inspector Monahan of Pittsburgh that the photograph of the plaintiff had been positively identified as that of the woman who passed some of the stolen money orders in Upper Darby, Pennsylvania, and that he had also been informed by a letter which he received from the Metropolitan Police Department of the District of Columbia that the plaintiff's husband had been arrested and charged with passing a forged check. It must be clear, therefore, that the facts shown by the evidence in the instant case present a stronger case for a directed verdict for the defendant than the facts shown by the evidence in the Campbell case.

I have quoted much of the language in the well reasoned opinion by Judge Maris for the reason that the important questions of law which have arisen in the instant case are clearly and ably discussed in that opinion.

I can reach no other conclusion than that the action of the trial court in directing the verdict for the defendant was proper, and that a refusal to do so when requested would have been error.

The motion of the plaintiff for a new trial is denied and a new trial is refused.