## VAN SANT v. AMERICAN EXP. CO.
### No. 9044.

Circuit Court of Appeals, Third Circuit.

Argued April 15, 1946.

Decided Dec. 18, 1946.

Rehearing Granted March 25, 1947.

T. Edward O'Connell, of Washington, D. C., and Thomas D. McBride, of Philadelphia, Pa., for appellant.

Robert T. McCracken, of Philadelphia, Pa. (C. Russell Phillips and Richard E. McDevitt, both of Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN and O'CONNELL, Circuit Judges, and GOURLEY, District Judge.

GOURLEY, District Judge.

This is an appeal from the action of the District Court of the United States for the Eastern District of Pennsylvania, granting a motion of defendant for a directed verdict in its favor and entering judgment thereon.

In the discussion made herein pertaining to the facts in this case, where the name Edna Frances Van Sant is used, it is to be realized that she is the same person as Frances Van Sant who appears to be the party plaintiff in this proceeding.

The plaintiff, a resident of Washington, D. C., brought her action against the defendant, American Express Company, an unincorporated association organized under the laws of the State of New York, on the ground that the defendant falsely, maliciously and without probable or reasonable cause instigated a number of prosecutions against her in various state courts.

The evidence disclosed that on January 2, 1941, a pad of 63 blank American Express Money Orders was stolen by an unidentified man from the Western Union Telegraph Office in Columbus, Ohio, all of them alike except that they were serially numbered. During the ensuing weeks nearly all of these money orders appeared endorsed with the same signature "Relda Hardman", and were passed off in various cities of the United States. Said action was pursued by a woman whose practice was to go into a store, buy an article of small value, and tender one of the stolen money orders for payment. In all instances the money orders were made out for $45.00, and the woman who cashed them received the difference in currency.

The money orders taken from the office of the American Express Company at Columbus, Ohio, were presented by some woman at various stores, in the manner hereinabove related, in the Township of Upper Darby and cities of Philadelphia and Pittsburgh, Pennsylvania; Providence, Rhode Island, and Minneapolis, Minnesota. It further appears that 62 of these money orders were negotiated by some woman at the places and in the manner aforementioned between January 3, 1941 and January 25, 1941.

The theft of the money orders was called to the attention of the American Express Company, more particularly James J. Bulger, Assistant Vice President and head of the Police Inspectors Department, on January 3, 1941. Subsequent to said date, agents of the defendant company proceeded with an investigation in an effort to ascertain the identity of the individual who had stolen said money orders. The victims of these frauds in the various cities where the money orders were negotiated complained to the police departments, and gave various descriptions pertaining to the identity of the woman who victimized the merchants.

It must be kept in mind that if any criminal proceedings were instituted by the defendant, or at the will and direction of the defendant, it was when the warrant was sworn out for the arrest of the plaintiff in the City of Philadelphia, Pennsylvania, on March 12, 1941, followed by the arrest and imprisonment of Edna Frances Van Sant

in Baltimore, Maryland, on March 15, 1941.

█ There does not appear to be any conflict in the testimony as to what the circumstances were at the time the proceedings were instituted in the City of Philadelphia on March 12, 1941, and the burden rested with the plaintiff, Edna Frances Van Sant, to show want of probable cause for the lodging of the criminal proceedings at the time that said warrant was filed.

In determining whether or not the lower court erred in directing a verdict in favor of the defendant, it is necessary to consider what information was available to the representatives of the American Express Company at the time that the prosecution was lodged in the City of Philadelphia on March 12, 1941.

In this connection a letter was forwarded to James J. Bulger, Inspector of the American Express Company, by Walter C. Monaghan, Inspector of Detectives in the City of Pittsburgh, Pennsylvania, which letter was dated January 30, 1941, and set forth in substance that seven individuals who had cashed some of said money orders had identified Edna Frances Van Sant as the person who had negotiated the money orders at their respective places of business and as a result thereof, a warrant had been issued for her arrest. The exact wording of said letter is set out in Footnote 1.

Furthermore a letter was forwarded on the 7th day of February, 1941, by Walter C. Monaghan, Inspector of Detectives in the City of Pittsburgh, to James J. Bulger, which stated in substance that the detectives in the City of Pittsburgh had been informed by the Superintendent of Police at Upper Darby, Pennsylvania, that Edna Frances Van Sant had been identified as the individual who had passed American Express Company money orders at Upper Darby on January 17, 1941, and that the Grand Jury sitting in the City of Pittsburgh, Allegheny County, Pennsylvania, had indicted Edna Frances Van Sant for the crime of forgery on February 6, 1941, but no idea of the whereabouts of said individual existed at that time. The letter just referred to is set forth in detail in Footnote 2.

A letter was forwarded by the Sheriff of Frederick County, Maryland, to James J. Bulger, on February 14, 1941, in which information was given that Edna Frances Van Sant and her husband were taken into

1 Letter dated January 30, 1941, from Walter C. Monaghan, to James J. Bulger, Inspector, American Express Company, 65 Broadway, New York.

"Dear Sir:

With further reference to your letter of January 29, 1941, enclosed please find descriptive photographs of William and Edna Van Sant.

Up to the present time, four American Express money orders have been passed in this city, all for the amount of $45.00 each. We have shown the photograph of Edna Van Sant to the victims that cashed these money orders and so far seven different persons have identified her as the party who passed them.

We have also forwarded these photographs to Joseph A. LeStrange, Chief of Police, Upper Darby, Pa., who teletyped us on the 29th regarding a woman by the name of Relda Hartman who passed several stolen money orders in Upper Darby, Pa.

Kindly advise us if you have this photograph identified by victims in other cities as this subject is wanted here and warrant has been issued. Very truly yours, Walter C. Monaghan, Inspector of Detectives."

2 This is the letter from Mr. Monaghan to James J. Bulger under date of February 7, 1941:

"Dear Sir:

Please be advised that we received a reply to our letter of the 29th of January to Mr. Joseph LeStrange, Superintendent of Police, Upper Darby, Pa., who writes that the above subject has been positively identified as the woman who passed American Express Company money orders in that City on January 17th, 1941. (2)

On February 6th, our grand jury indicted this subject for forgery and we have placed a stop on her at the Federal Bureau of Investigation. We have no idea of the whereabouts of this subject at this time.

Assuring you of our willingness to cooperate at all times, I remain, Very truly yours, Walter C. Monaghan."

custody by the Police Department at Washington, D. C., on October 30, 1940, at which time William Francis Van Sant was charged with the negotiating of bogus checks and that his wife had been released due to the fact that no charges were filed against her. There were also enclosed in the letter photographs of Edna Frances Van Sant and her husband. The terms and contents of said letter are set out in Footnote 3.

That in addition thereto, on February 6, 1941, a Grand Jury sitting at Pittsburgh, Allegheny County, Pennsylvania, indicted Edna Frances Van Sant for forgery of the American Express money orders which had been presented to various merchants in the City of Pittsburgh, Pennsylvania.

It was contended by the defendant that subsequent to this information being received, the defendant company, through its agents, had communicated with various police departments in the cities where the checks had been negotiated. That said activities were pursued in an effort to lend any assistance that might be requested by said police departments and also representatives of the defendant company proceeded with their own investigation, with the ultimate purpose to be the apprehension of Edna Frances Van Sant. On March 12, 1941, a member of the detective force in the City of Philadelphia, at the direction of his superior officer, swore out a warrant for the arrest of Edna Frances Van Sant and on March 13, 1941, James J. Bulger, an inspector of the defendant company, came to Philadelphia and accompanied representatives of said police department to Baltimore, Maryland, where Edna Frances Van Sant was taken into the custody of the law on March 15, 1941,

From this time there is considerable conflict as to what the circumstances were in the continuation of the investigations which were made, and the prosecution of Edna Frances Van Sant for the negotiating of said money orders in the various cities before referred to. It is contended by the American Express Company that any act which they committed was in furtherance of their duty to lend aid and assistance to the various police departments to bring a law violator to justice. On the other hand, the plaintiff, Edna Frances Van Sant, contends that the activities of the defendant company, through its various agents, indicate a maliciousness and ill will on the part of the defendant to proceed with the various prosecutions, regardless of what the circumstances might be, and that said activities clearly establish a lack of probable cause which justifies a right of recovery.

Edna Frances Van Sant was exonerated in connection with all of the cases in which she was accused either by trial or by dismissal of the proceedings, with the exception of the indictment returned in the City of Pittsburgh, Allegheny County, Pennsylvania, in May of 1941, in which she was convicted by a jury at a trial held in December of 1941.

---

3 Guy Anders, Sheriff of Frederick County, wrote a letter dated February 14, 1941, to the witness, Mr. James J. Bulger:

"Dear Sir:

In reply to your letter of February 13, 1941, I am enclosing herewith photostatic copy of one of the several bogus checks which William Francis Van Sant passed here in Frederick County, and also our photographs of Van Sant, in an effort to assist you in the investigation of the matter about which you write.

Van Sant is at present at liberty under bond for the action of the February Term Grand Jury of this County, and his case will be considered by them next Thursday, February 20. He was apprehended, together with his wife, by the Police Department or Detective Bureau of Washington, D. C., on October 30, 1940, and since there were no charges against her, she was released immediately, although the Washington authorities may have taken her photograph and description. It is just possible that if you get in touch with them, they may be able to locate her for you at the Grafton Hotel in Washington, where they were originally apprehended.

I will greatly appreciate it if you will return the photographs of Van Sant and the photostatic copy of the check as soon as possible, as these are the only copies which I have.

Very truly yours,

Guy Anders, Sheriff."

The plaintiff does not contend she is entitled to recover in connection with the case in the City of Pittsburgh, Pennsylvania, in which she was convicted, but a right of recovery is claimed in those cases where she was arrested and prosecuted for offenses in the Township of Upper Darby and City of Philadelphia, Pennsylvania, City of Minneapolis, Minnesota, and the first case in the City of Pittsburgh, Pennsylvania. It is, in substance, the claim of the plaintiff in this proceeding that the evidence clearly shows that the American Express Company was the real or direct prosecutor in every sense of the word. Also it was a question for the jury to determine whether the defendant acted with probable cause in any or all of said prosecutions, and if the actions of the defendant were primarily because of a purpose other than that of bringing an offender to justice.

There is no principle more firmly embedded in the law than that in cases of malicious prosecution, the question of want of probable cause for the criminal prosecution which gives rise to a civil action is a question not for the jury but for the court. Furthermore where there is no conflict in the testimony as to the circumstances under which a defendant acted in initiating criminal proceedings against a party, or the circumstances are admitted by the parties, or the evidence is clear and uncontradicted, there is no need for a finding of the jury as to the facts upon which the existence or nonexistence of probable cause is to be based. Simpson v. Montgomery Ward & Co., 354 Pa. 87, 46 A.2d 674; Campbell v. Yellow Cab Co., 3 Cir., 137 F.2d 918; Wolter v. Safeway Stores, Inc., 80 U.S.App.D.C. 357, 153 F.2d 641; Taubman, Appellant, v. Schulte, Inc., 302 Pa. 170, 153 A. 150; Altman, Appellant, v. Standard Refrigerator Co., Inc., 315 Pa. 465, 173 A. 411; Robitzek, Appellant, v. Daum, 220 Pa. 61, 69 A. 96; Boyd, Appellant, v. Kerr, 216 Pa. 259, 65 A. 674; Morphy, Appellant, v. Shipley et al., 351 Pa. 425, 41 A.2d 671.

In the case at bar the law of Pennsylvania is applicable. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Campbell v. Yellow Cab Co., 3 Cir., 137 F.2d 918, 923.

To support an action for malicious criminal prosecution, the plaintiff must allege and prove, (1) the commencement or continuance of a criminal prosecution against the plaintiff; (2) that the defendant was the prosecutor or instigator of the prosecution; (3) that the prosecution was dismissed, or terminated in the plaintiff's acquittal; (4) that the charge preferred against the plaintiff was unfounded, and that it was made without reasonable or probable cause; (5) that the defendant in making or instigating the prosecution was actuated by malice; (6) that damages, conforming to legal standards, resulted to the plaintiff. The failure to prove any one of the foregoing essentials is fatal. Wheeler v. Nesbitt, 24 How. 544, 65 U.S. 544, 16 L.Ed. 765; Chapman v. Anderson, 55 App.D.C. 165, 3 F.2d 336; 38 Corpus Juris 336; Wolter v. Safeway Stores, D.C., 60 F.Supp. 12; Morphy, Appellant, v. Shipley et al., 351 Pa. 425, 41 A.2d 671.

One who initiates criminal proceedings against another has reasonable or probable cause for so doing if he reasonably believes that the person accused has acted or failed to act in a particular manner; or correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused, or mistakingly so believes by placing reliance on the advice of counsel. Representations of others are also sufficient foundation for probable cause in instituting criminal prosecution against another where the representation is made or information is given by persons who have had opportunity to secure the knowledge or information which is communicated to the individual who makes, directs or influences a prosecution. It is sufficient if the accuser honestly and reasonably believes the facts or information which is communicated to him. Probable cause is a reasonable ground of suspicion supported by circumstances suffi-

cient to warrant an ordinary prudent man in believing that the information communicated to him is sound, reasonable, logical and presents a just ground sufficient to create a suspicion of guilt and that the person to whom said information was communicated honestly believed the information to be true. Simpson v. Montgomery Ward & Co., 354 Pa. 87, 46 A.2d 674; Campbell v. Yellow Cab Co., 3 Cir., 137 F.2d 918; Curley, Appellant, v. Automobile Finance Co., 343 Pa. 280, 23 A.2d 48, 139 A.L.R. 1082; Restatement of the Law of Torts, Vol. 3, Section 662.

Furthermore probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting. So that the question to be decided is not whether the defendant in the prosecution was actually guilty but whether what the prosecutor had before him when he began the prosecution was sufficient to justify an honest and reasonable belief, or strong suspicion that the party charged was guilty. Taubman, Appellant, v. Schulte, Inc., 302 Pa. 170, 153 A. 150; Curley, Appellant, v. Automobile Finance Co., 343 Pa. 280, 23 A.2d 48, 139 A.L.R. 1082; Robitzek, Appellant, v. Daum, 220 Pa. 61, 69 A. 96; Boyd v. Kerr, 216 Pa. 259, 65 A. 674; 4 American Jurisprudence, 1939, Par. 48, pp. 33, 34; Wolter v. Safeway Stores, Inc., D.C., 60 F.Supp. 12; Stacey v. Emery, 97 U.S. 642, at page 645, 24 L.Ed. 1035.

In addition thereto, malice of itself without the ingredient of want of probable cause, or want of probable cause without malice are not sufficient to support a right of recovery in an action for malicious prosecution. If there be reasonable or probable cause, malice, however distinctly proved, will not make the defendant liable. If this were not so, the evil spirit of the prosecutor might redeem the evil act of the person accused. Simpson v. Montgomery Ward & Co., 354 Pa. 87, at page 103, 46 A.2d 674; Stacey v. Emery, 97 U.S. 642, at page 645, 24 L.Ed. 1035; Campbell v. Yellow Cab Co., 3 Cir., 137 F.2d 918; 38 Corpus Juris, Section 27, page 401.

It is also well to remember in considering the question as to whether or not the plaintiff in this action has proved affirmatively that the defendant had no reasonable or probable ground for instituting or being concerned in the proceedings about which complaint is made, that the mere fact of the acquittal of the defendant in the criminal proceeding is not evidence in an action for malicious prosecution of the want of probable cause for the prosecution. Altman, Appellant, v. Standard Refrigerator Co., 315 Pa. 465, 173 A. 411.

Keeping in mind the principles of law hereinabove referred to, we are faced with the responsibility of determining whether or not there is a conflict in the testimony as to what the circumstances were at the time the prosecutions were instituted on March 12, 1941, since the inquiry as to probable cause goes back to the commencement of the prosecution and relates to the facts then known and as they then appeared. It is not confined to the truth of matters that lead to the prosecutions, but extends to their appearance indicating the guilt or innocence of the accused. While mere floating rumors are not an adequate foundation for it, representations of others may be, and especially representations made by those who have had opportunities for knowledge, or who have made an investigation. Bryant v. Kuntz, Appellant, 25 Pa.Super. 102.

The plaintiff in this proceeding argues that even if the information available to the American Express Company, in the criminal proceeding pertaining to the arrest of Edna Frances Van Sant for the first offense committed in Pittsburgh, would establish sufficient probable cause for that offense, it is unreasonable to find as a matter of law that such information created probable cause for her prosecution and arrest pertaining to separate and distinct offenses committed in the Township of Upper Darby and City of Philadelphia, Pennsylvania, the second prosecution in Pittsburgh, Pennsylvania, or the offense in Minneapolis, Minnesota. In this connection the money orders were negotiated between January 3 and January 25, 1941, and although not passed at the

same time, they were all stolen on the same occasion. We believe that the District Court did not commit error in concluding that in each instance at all the cities referred to the money orders were passed under the same circumstances, and that probable and reasonable cause existed to arrive at the conclusion that they were negotiated by the same person. Furthermore, the lower court did not commit error in finding that facts existed upon which the defendant could honestly arrive at the conclusion that the individual identified in the City of Pittsburgh was the same person who was concerned in the passing of the money orders in the other cities. Alexander P. Macauley, Respondent, v. Theodore B. Starr, Inc., Appellant, 194 App.Div. 643, at page 650, 186 N.Y.S. 2d 197.

The plaintiff in this proceeding furthermore contends that the activities of the defendant in communicating with the police departments, furnishing them with pictures, offering rewards for the apprehension of the offender, working in close communication with the Philadelphia Police Department, paying the expenses incident to the arrest of the accused, the hiring of personal counsel in the trial of prosecutions, and the hiring of handwriting experts to aid in the prosecution, indicate not only ill will and malice to the accused but also want of probable cause for the arrest in the first instance.

All of these matters occurred subsequent to the time the information was sworn out against the accused in the City of Philadelphia on March 12, 1941, or subsequent to the information communicated to the defendant by the Pittsburgh Police Department. We do not, therefore, believe that said facts raise a controversy as to what the circumstances were and as to whether or not probable cause existed when the warrant for the arrest of the defendant was filed in Philadelphia on March 12, 1941. If there was a conflict in the testimony as to what the circumstances were on March 12, 1941, it would have been the duty of the Court to either submit said testimony to the jury with instructions to render a special verdict, answering the

question as to the existence or nonexistence of an honest, reasonable belief on the part of the person initiating the prosecution, of the guilt of the accused, or instruct the jury that they must first determine whether or not an honest, reasonable belief on the part of the initiator of the prosecution existed, and if they find it did, it would be their duty to return their verdict for the defendant. Simpson v. Montgomery Ward & Co., 354 Pa. 87, at pages 96, 97, 46 A.2d 674.

However, under the clearly established state of facts existing on March 12, 1941, we believe that probable cause existed for the filing of the various proceedings about which complaint is now made. The conflict in the testimony about which the plaintiff in this proceeding makes earnest complaint, in our opinion, has application to the question as to whether or not the activities of the defendant were carried on due to malice or ill will, and not as to whether probable cause existed. Actions for malicious prosecution are regarded by law with jealousy and they ought not to be favored but managed with great caution. Their tendency is to discourage prosecution for crime as they expose the prosecutor to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecutions when, if they fail, they may be subjected to the expense of litigation, if they be not mulcted in damages. Suits by which the complainant in a criminal prosecution is made liable to an action for damages, at the suit of the person complained of, are not to be favored in law, as they have a tendency to deter men who know of the breaches of the law from prosecuting offenders thereby endangering the order and peace of the community. Although the Court should not discourage actions for malicious prosecutions, by establishing harsh rules of evidence, or by the rigid principles of law, by force of which a party may be deprived of an important remedy for a real injury, at the same time, all proper guard and protection should be drawn around those who, in obedience to the mandates of duty, may be compelled to originate, carry on, aid or assist in a

932

criminal prosecution which may from any cause terminate in favor of the accused.

We, therefore, conclude that under the admitted or clearly established state of facts which existed on March 12, 1941, probable cause existed for the prosecution of the various complaints filed against Edna Frances Van Sant and, as a result thereof, it matters not whether the motives of the agents of the defendant company were praiseworthy or malicious, and it was the duty of the Court to enter a directed verdict in favor of the defendant.

The purpose of discovery of an offender where probable cause existed that the accused had committed the crimes, and vindication of justice is apparent on the face of this whole proceeding. As stated by the lower court, if Edna Frances Van Sant was innocent of the crimes with which she was charged, it is to say the least most unfortunate and she has the sympathy of all the right thinking people. Furthermore, without question of doubt, it has been a severe hardship to the plaintiff in this proceeding to be subjected to arrest and imprisonment. However, that is an inevitable occasional result of living in a civilized and orderly community. Some concession to public interests, and some sacrifice of individual rights, are part of the foundation on which society and our democratic way of life is supported.

If such circumstances as those detailed were not sufficient to justify the defendant in invoking the protection of the law through the criminal courts, then the hope of any such protection is a vain thing. We believe that the trial judge would have erred if he had not given binding instructions for the defendant on the ground that probable cause for the prosecutions was clearly shown by the uncontradicted evidence in the case as it existed at the time the complaints were lodged in the City of Philadelphia, Pennsylvania, on March 12, 1941.

Therefore, the judgment of the District Court is hereby affirmed.

Judge O'CONNELL participated in the consideration and decision of this case but was unable to collaborate in the preparation of the opinion.