Florence W. MASON and Willard M. Mason, Plaintiffs,

v.

AMERICAN EXPRESS COMPANY and Howard L. Clark as President of American Express Company, Defendants.

United States District Court
S. D. New York.
Dec. 12, 1963.

Baker, Nelson, Williams & Mitchell, New York City, for plaintiffs.

Charles Dickerman Williams, New York City, of counsel.

Michels, Gangel & Walton, New York City, for defendants.

Louis W. Mele, New York City, **of** counsel.

WYATT, District Judge.

A separate trial was ordered by the Court, on motion of plaintiffs and without opposition by defendant, of the issues raised by the Second Defense in the answer. Fed.R.Civ.P. 42(b). These issues relate to whether the provisions of a certain circular, a ticket and a receipt delivered to plaintiffs are sufficient to absolve defendant of liability. The separate trial was ordered because if the Second Defense is sustained it is a bar to the action.

That separate trial has taken place to the Court, without a jury, by consent of the parties; all rights of the parties to a jury as to all other issues were reserved.

Plaintiffs are husband and wife. The action arises out of a personal injury suffered by Mrs. Mason on February 13, 1960 while crossing the Nile River in Egypt from Luxor to Thebes. Travel arrangements for the shore excursion which included this crossing had been made by plaintiffs with defendant.

Plaintiffs are citizens of New Jersey. Defendant is a joint stock association organized under New York law. Jurisdiction of this Court is rested on diversity of citizenship. 28 U.S.C. § 1332(a)(1).

During consideration of this matter, the Court became concerned as to whether diversity of citizenship exists so as to support jurisdiction under 28 U.S.C. § 1332(a)(1). It has been held that there is no jurisdiction. Brocki v. American Express Company, 279 F.2d 785 (6th Cir.1960); cert. denied, 364 U.S. 871, 81 S.Ct. 113, 5 L.Ed.2d 92 (1960). The attention of counsel was called to the problem and their views obtained.

With great reluctance and with equal regret, it is concluded that this Court is without jurisdiction and that the action for this reason must be dismissed.

The problem arises because of the somewhat unusual nature of defendant as a joint stock association. This form of organization is rare for a large publicly owned business and, with respect to defendant, has recently attracted the attention of the press (e.g. The New York Times, November 30, 1963, page 31, column 1; TIME magazine, December 13, 1963, page 87A, column 2).

The complaint alleges that defendant "is a joint stock company organized under the laws of the State of New York".

The answer of defendant avers that it "is an unincorporated association consisting of more than seven members organized under the laws of the State of New York".

Shortly after defendant answered, the caption of the action was changed by agreement to add as a party defendant "Howard L. Clark, as President of American Express Company" and it was further agreed that Clark was "named defendant in that capacity as a means of bringing suit against said American Express Company in accordance with Section 7 of the Unincorporated Associations Law of the State of New York" (apparently the reference is to Section 13 of the General Associations Law of New York).

The pertinent facts as to American Express Company, while not appearing in total in the pleadings or in the formal record, appear to be beyond dispute.

American Express Company was organized under the laws of New York on November 25, 1868 as a joint stock association, which was then, and is now, one of several types of unincorporated associations. The shares of American Express are actively traded in the over-the-counter market. At the present time, it has over 20,000 member shareholders (the last certicate filed under General Associations Law, § 4, gives the number as 23,366); according to a letter from its counsel, "as of March 31, 1962" [should this be "1963"?], there were 1,602 member shareholders "residing" in New Jersey. It must be assumed therefore that there are member shareholders of American Express domiciled in, and citizens of, New Jersey, the same state of which plaintiffs are citizens.

Jurisdiction in this Court thus depends on whether the defendant association has New York citizenship, as a corporation might have, or whether its citizenship is that of its individual members, as in the case of an ordinary partnership.

When American Express was organized in 1868, the laws of New York recognized and authorized joint stock associations in substantially the same manner as to-day, endowing them with certain but not all of the characteristics of corporations and leaving them with some of the characteristics of the partnerships which in fact they are. The great study in this field is that by Professor Warren, Corporate Advantages Without Incorporation (New York, 1929); his specific treatment of New York law is at pages 426–507.

A joint stock association can have shares and upon transfer of shares (or upon the death, insanity or bankruptcy of an associate) there is no dissolution or liquidation of the enterprise, as would be the case with an ordinary partnership. General Associations Law, §§ 3, 5, McKinney's Consol. Laws, c. 29.

The joint stock association can hold real property in the name of its president under certain circumstances. See General Associations Law, § 6.

The powers of managament can be concentrated in a few associates and these can be made a self-perpetuating body. General Associations Law, § 3; Spraker v. Platt, 158 App.Div. 377, 143 N.Y.S. 440, 447–448 (3d Dept., 1913).

Suit can be brought by or against the association without making all of the associates parties to the suit. The president or treasurer can act in a representative capacity. General Associations Law, §§ 12, 13.

■ The foregoing are all characteristics similar to those of corporations. But in at least one important respect, there is radical difference between a corporation and a joint stock association in New York. The shareholder of a corporation is not personally liable for the debts of the corporation. The shareholders of a joint stock association are personally liable for the debts of the association. National Bank of Schuylerville v. Van Derwerker, 74 N.Y. 234 (1878); People ex rel. Winchester v. Coleman, 133 N.Y. 279, 285, 31 N.E. 96, 16 L.R.A. 183 (1892); Warren, above cited, 460.

Beginning about the middle of the nineteenth century many express companies were organized as joint stock associations under New York law. The reasons for this are suggested in the following passage from 1 Dewing, The Financial Policy of Corporations (5th ed.) 70:

"Owing to the unlimited liability that attaches itself to such partnership interests, these certificates of association are not in use anywhere in the United States, except in the case of the large express companies and certain small New England businesses which have maintained a kind of localized partnership character for the last fifty or more years. The express companies' stocks are the only remaining partnership shares which are held by the public. These partnerships were formed many years ago by means of 'articles of association' under which the original associates and their successors agreed to engage in the express business. The management was restricted to a small group of officials which organized and maintained itself independently of the great body of certificate holders or partners. In this manner the management of the association was independent of all regulation either from within or without, and it was not until the federal government, by the constitutional authority of the 'commerce between the states' provision, placed the express companies under the Interstate Commerce Commission that any control was exercised over the conduct of their business."

See also American Express Company v. United States, 29 S.Ct. 315, 53 L.Ed. 635, 212 U.S. 522 (1909); United States v.

Adams Express Company, 229 U.S. 381, 33 S.Ct. 878, 57 L.Ed. 1237 (1913).

Elsewhere at 2 Dewing, above cited, 858, appears the following comment:

> "In two important respects the joint stock company differs from the ordinary business corporation. Its shareholders are, like partners in a partnership, liable for the debts of the association; and the board of management is self-perpetuating and not elected, as in the case of an American corporation. Owing to both of these characteristics, the joint stock form of organization has been little used, during the last century, in the United States."

And the following footnote:

> "The nearest approach to the joint stock company of Elizabethan and Stuart England in the United States was the large express companies. The parallelism is not exact. The shareholders of the express companies were probably liable for the debts of the association and the management was self-perpetuating. * * * "

We need now to turn to a study of the citizenship of corporations and of joint stock associations for the purposes of the diversity jurisdiction of federal courts.

"It took half a century of litigation" in the Supreme Court "finally to confer on a corporation, through the use of a fiction, citizenship in the chartering state for jurisdictional purposes". Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 169, 60 S.Ct. 153, 84 L.Ed. 167 (1939). The decision "finally" determining that a corporation was a citizen of the state of its incorporation was in 1853. Marshall v. Baltimore & Ohio R. R. Co., 16 How. 314, 57 U.S. 314, 14 L.Ed. 953.

In 1876 an action involving defendant association was in a federal court. Although recognizing that the shareholders were "liable individually for the debts of the association", the court felt, on the authority of the Marshall case and other Supreme Court cases, that defendant "must be regarded as a citizen of the state which created it" and that it was "immaterial whether it be termed a corporation, joint stock association or guild". Jurisdiction was therefore sustained but some doubt was indicated "whether this action is properly brought against the defendant by the name of the American Express Co." Maltz v. American Express Co., 16 Fed.Cas. 566 (C.C. E.D.Mich.1876).

Then in 1889 came Chapman v. Barney, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800. Chapman, as president of United States Express Company, sued a citizen of Illinois in a federal court. Chapman alleged that the company was "a joint stock company" under New York law and was "a citizen of the State of New York". The Supreme Court, on its own motion, raised the question of jurisdiction (after there had been judgment in favor of plaintiff) and found that there was no jurisdiction:

> "On looking into the record we find no satisfactory showing as to the citizenship of the plaintiff. The allegation of the amended petition is, that the United States Express Company is a joint stock company organized under a law of the State of New York, and is a citizen of that State. But the express company cannot be a *citizen* of New York, within the meaning of the statutes regulating jurisdiction, unless it be a corporation. The allegation that the company was *organized* under the laws of New York is not an allegation that it is a corporation. In fact, the allegation is, that the company is *not* a corporation, but a joint-stock company—that is, a mere partnership. And, although it may be authorized by the laws of the State of New York to bring suit in the name of its president, that fact cannot give the company power, by that name, to sue in a Federal court.

> "The company may have been organized under the laws of the State of New York, and may be doing business in that State, and yet all the members of it may not be citizens of that State. The record does not

show the citizenship of Barney or of any of the members of the company. They are not shown to be citizens of some State other than Illinois." (129 U.S. at 682, 9 S.Ct. at 427, 428, 32 L.Ed. 800; emphasis in original)

Thereafter it was naturally held in the lower federal courts that the New York joint stock express companies could not be sued in, or removed to, a federal court unless the citizenship of each of the shareholder members or associates was different from that of plaintiff. For example, on a petition to remove by Adams Express Co. it was required to set forth in such petition the citizenship of all of its shareholders or face a remand. To an objection that this would require setting out the citizenship of more than 3,000 shareholders and thus be an onerous burden, the court said:

"Certain advantages accrue to defendants by so many of them being able to do business together without incorporation. If it were not so, they would not transact business in this way. Certain disadvantages grow out of it also. They should take the disadvantages with the advantages—the bitter with the sweet. I think the fair inference from the decisions in the cases of Chapman v. Barney, 129 U.S. 677, 9 Sup.Ct. 426, 32 L.Ed. 800, Great So. F. P. H. Co. v. Jones, 177 U.S. 449, 20 Sup.Ct. 690, 44 L.Ed. 482, is that the numerousness of parties plaintiff or defendant is not sufficient to take a case out of the well-settled rules heretofore stated." Jones v. Adams Express Co., 129 F. 618, 619 (C.C. E.D.Ky.1904).

In Rountree v. Adams Express Co., 165 F. 152 (8th Cir. 1908) the court of its own motion dismissed for want of jurisdiction an action brought by the company (also a New York joint stock association) because the "averment that the complainant is a joint-stock company is not equivalent to the statement that it is a corporation" (165 F. at 154).

In Taylor v. Weir, 171 F. 636 (3d Cir. 1909) plaintiff sued Adams Express Company in a Pennsylvania state court. Defendant objected that it could be sued only in the name of its president or treasurer. Plaintiff thereupon amended to sue Levi C. Weir, a president of the company. Weir then removed to the federal court and a trial was had, resulting in a small judgment for plaintiff. Thereupon, plaintiff moved to set the judgment aside for want of jurisdiction and to remand (in doing so plaintiff was doubtless motivated by the small size of the judgment). This motion was denied. On appeal, the decision below was reversed and the action ordered remanded to the state court. The Circuit Court of Appeals said (171 F. at 639):

"It is perfectly clear that the Adams Express Company, not being a corporation, but an unincorporated stock company or partnership, cannot, as such, have citizenship attributed to it as an entity, apart from that of its individual members, nor, apart from special legislation, can they be made party defendants by their partnership or stock company name."

In 1933 the Supreme Court decided Puerto Rico v. Russell & Co., 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903. Defendant was a "sociedad en comandita" under Puerto Rican law; the "sociedad" had individual members. The question was whether the sociedad was "a juridical entity under Puerto Rican law and, as in the case of a corporation, its domicil rather than that of its members determines citizenship for purposes of federal jurisdiction" (288 U.S. at 479, 53 S.Ct. at 448, 77 L.Ed. 903). The court decided that a "sociedad" was a juridical entity under Puerto Rican law and that the domicile of a "sociedad" was separate from that of its individual members and controlled for citizenship purposes. The court reviewed the characteristics of the "sociedad" and then declared (288 U.S. at 482, 53 S.Ct. 449, 77 L.Ed. 903):

"These characteristics under the Codes of Puerto Rico give content

to their declaration that the *sociedad* is a juridical person. That personality is so complete in contemplation of the law of Puerto Rico that we see no adequate reason for holding that the *sociedad* has a different status for purposes of federal jurisdiction than a corporation organized under that law."

This seems at first glance to run counter to Chapman v. Barney but in fact it does no more than give effect to the civil law concept of the "sociedad" as a juridical entity, leaving undisturbed the application of Chapman v. Barney to joint stock associations in common law jurisdictions. The court's opinion seems to make this plain and to emphasize the contrast (288 U.S. at 480, 53 S.Ct. 448, 77 L.Ed. 903):

> "But status as a unit for purposes of suit alone, as in the case of a joint stock company, see Chapman v. Barney, 129 U.S. 677, 682 [9 S.Ct. 426, 32 L.Ed. 800]; Levering & Garriques Co. v. Morrin [2 Cir.], 61 F.2d 115, 117, or a limited partnership, not shown to have the other attributes of a corporation, Great Southern Fireproof Hotel Co. v. Jones, 177 U.S. 449 [20 S.Ct. 690, 44 L.Ed. 842] (compare Thomas v. Board of Trustees, 195 U.S. 207 [25 S.Ct. 24, 49 L.Ed. 160]) has been deemed a legal personality too incomplete; what was but an association of individuals for so many ends and a juridical entity for only a few, was not easily to be treated as if it were a single citizen.
>
> 'The tradition of the common law is to treat as legal persons only incorporated groups and to assimilate all others to partnerships. Chapman v. Barney, supra; Great Southern Fireproof Hotel Co. v. Jones, supra. The tradition of the civil law, as expressed in the Code of Puerto Rico, is otherwise."

Aside from the differing civil law concept applicable to a "sociedad", there are other differences between a "sociedad" and a New York joint stock association. For example, the definition in New York of a "joint stock association" specifically excludes "a corporation". General Associations Law, § 2(1). A "sociedad" may sue and be sued in its own name but a joint stock association must sue or be sued either in the names of the members or of the president or treasurer. General Associations Law §§ 12, 13. True, suits are often maintained against the association under its name but in such cases the point is not raised; when the point is raised it is sustained. For example, see Taylor v. Weir, above cited. The members of a "sociedad" are not primarily liable for its debts. 288 U.S. at 481, 53 S.Ct. at 449, 77 L.Ed. 903. The associates of a joint stock association are primarily liable and may be sued directly in the first instance.

> " * * * the invariable truth is that the creation of the corporation necessarily destroys the common-law liability of the individual members for its debts, and requires at the hands of the creating power an affirmative imposition of new personal liabilities, or a specific retention of old ones from the destruction which would otherwise follow. Exactly the opposite is true of joint-stock companies. Their formation destroys no part or portion of their common-law liability for the debts contracted. Those debts are their debts, for which they must answer. Permission to sue their president or treasurer is only a convenient mode of enforcing that liability, but in no manner creates or saves it. The statute of 1853 did interfere with it. That act required, in the first instance, a suit against the president or treasurer, and so a preliminary exhaustion of the joint property. * * * Even that mode of procedure has been modified by the Code, (§§ 1922, 1923,) so that the creditor, at his option may sue the associates without first bringing his action against the president or treasurer." People ex rel. Winchester v. Coleman, above cited, at 133 N.Y. 285–286, 31 N.E. 97, 16 L.R.A. 183.

These differences serve entirely to distinguish Puerto Rico v. Russell & Co. from the case at bar.

That decision, however, appears to have influenced to some extent the final decision in Van Sant v. American Express Co., 169 F.2d 355 (3d Cir. 1948); see also 158 F.2d 924 (3d Cir. 1947).

Plaintiff there sued defendant in a federal court for malicious prosecution, asserting diversity jurisdiction in that she was a "resident" of Washington, D. C. and defendant was "an unincorporated association organized under the laws of the State of New York" (158 F.2d at 926). After trial, a motion by defendant for a directed verdict was granted and judgment for defendant entered. Diversity jurisdiction was assumed without discussion. A motion for a new trial was denied. 61 F.Supp. 337 (E.D.Pa. 1945). The judgment for defendant was affirmed, again diversity jurisdiction being assumed without discussion. 158 F.2d 924. The appellant plaintiff filed a petition for rehearing which was granted and rehearing held. The Court of Appeals then vacated its earlier decision and opinion, reversed the judgment for defendant and granted a new trial; again diversity jurisdiction was assumed without discussion. 169 F.2d 355–370. Defendant American Express then attacked for the first time the residence of plaintiff in the District of Columbia as a basis for diversity jurisdiction. Plaintiff then applied to amend her complaint (a) to allege her residence in Virginia and (b) to allege that defendant "is a joint stock association organized under the laws of the State of New York" (169 F.2d at 371); her averment had been that defendant was an "unincorporated association" (158 F.2d at 926). Defendant American Express opposed this motion primarily on the ground that it had "no citizenship of its own", that it had a member "residing" in Virginia and that consequently there was no diversity if plaintiff were a resident of Virginia (169 F.2d at 371). The motion by plaintiff to amend was nevertheless granted and, while the opinion is unclear, the court appears to have felt that defendant was a citizen of New York and that diversity therefore existed (169 F.2d 370–372).

While the Van Sant decision is entitled to respectful consideration, it is not binding on this Court and with the greatest deference it is here concluded that on the point at issue the decision in Van Sant is not correct. Some of the reasons for this conclusion are:

a. the court seems to have been diverted from the question of jurisdiction to the question whether defendant American Express could be sued in its own name, as to which it followed the law of Pennsylvania ("This distinction between suability and citizenship in this Constitutional sense may have been overlooked in Van Sant * * *." Swan v. First Church of Christ, 225 F.2d 745, 748, 9th Cir. 1955);

b. the court appears to have read mistakenly Puerto Rico v. Russell & Co., above, to have concluded that Chapman v. Barney, above, was "outmoded" (169 F.2d at 372) and to have overlooked its own prior decision in Taylor v. Weir, above cited;

c. the court quotes from Russell a description by the Supreme Court of a "sociedad" as "a limited partnership in the common law sense" and concludes that this was "held to be an entity for jurisdictional purposes" (169 F.2d at 372). What the Supreme Court said about a "sociedad", however, was as follows (288 U.S. at 480–481, 53 S.Ct. at 448, 449, 77 L.Ed. 903; emphasis supplied):

"Therefore to call the sociedad en comandita a limited partnership in the common law sense, as the respondents and others have done, is to invoke *a false analogy*";

and

d. the court concluded that a joint stock association "is considered for practical purposes a corporation" in New York. This conclusion does not appear to be justified. The court

relied on Hibbs v. Brown, 190 N.Y. 167, 82 N.E. 1108 (1907) and Jones v. Healy, 184 Misc. 923, 55 N.Y.S.2d 349 (Special Term, N.Y. County, 1945), affirmed 270 App.Div. 895, 62 N.Y.S.2d 605 (1st Dept. 1946). Hibbs v. Brown is analyzed painstakingly in Warren, above cited, 477–500. Professor Warren concludes that it was a "hard case" which made "bad law" (500). Jones v. Healy involved an appraisal of the value of the shares of Adams Express Company which by that time had become an open end investment company. The decision was simply that the shares should not be valued as if the company were an "ordinary partnership" but that "[r]egardless of legal theories, the stock in this association has an identity and incidents apart from any interest which the shareholders may have in the assets of the association (55 N.Y.S.2d at 356).

In Arbuthnot v. State Automobile Ins. Ass'n, 264 F.2d 260 (10th Cir. 1959) the court refused to follow Van Sant. Defendant was an "unincorporated reciprocal or inter-insurance exchange organized and existing under the laws of Iowa". Judgment of dismissal for lack of jurisdiction (some of the members of the exchange were citizens of the same states as plaintiffs) was affirmed, the court saying (264 F.2d at 262):

"Not without logic, the plaintiffs urge that inter-insurance exchanges of the defendant's type are indistinguishable from the corporate form of organization and that therefore the defendant should be considered as having citizenship in Iowa. In support of this contention, the plaintiffs point out that defendant has thousands of subscribers throughout the country and that it exercises, through a centralized unity of action, all of the functions and authority of incorporated insurance companies. It is also said, with some justification, that there is a basis in the law for extending the rule that a corporation is a citizen of the state of its formation to organizations having corporate characteristics. Moore, Fed.Practice, 2d Ed., Vol. 3, § 17.25, at p. 1413; People of Puerto Rico v. Russell & Co., supra [288 U. S.]; United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975; American Federation of Musicians v. Stein, supra [6 Cir., 213 F.2d 679]. It may be that upon reexamination of the subject the Supreme Court will adopt a broader rule, but until it does we feel compelled to follow the law as it now exists."

More recently (1960) in Brocki v. American Express Company, above cited, the Court of Appeals for the Sixth Circuit, differing with the Third Circuit, decided that American Express "cannot be deemed a citizen, apart from its members, for the purpose of diversity jurisdiction" (279 F.2d 785). The reasons for this conclusion are fully developed and Van Sant is discussed.

Cases in this Circuit such as J. C. Penney Co. v. American Express Co., Inc., 201 F.2d 846 (2d Cir. 1953) are of no significance because they involve a subsidiary corporation of the defendant joint stock association in the case at bar.

No decision in this Circuit has been found dealing with the citizenship of defendant association or of other New York joint stock associations. Chapman v. Barney was cited with approval in 1932. Levering & Garrigues Co. v. Morrin, 61 F.2d 115, 118 (2d Cir. 1932), affirmed 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933). Decisions as to unincorporated associations follow the rule in Chapman v. Barney. See, for example, A. H. Bull Steamship Co. v. National Marine Eng. B. Ass'n, 250 F.2d 332, 335 (2d Cir. 1957).

██ Believing that Brocki was properly decided for sound reasons and that any departure from Chapman v. Barney should be by the Court of Appeals or by the Supreme Court, it is concluded that defendant has no citizenship apart from

that of its member shareholders and since the citizenship of some of such members is the same as that of plaintiffs (New Jersey), there is a want of jurisdiction in this Court.

The Clerk is accordingly directed to enter judgment dismissing the action for lack of jurisdiction of the subject matter. Fed.R.Civ.P. p 12(h) (2).

So ordered.