### W. L. Cabell et al. v. H. D. Arnold.

#### No. 42.

**Arrest by Deputy while Warrant is in Hands of Principal.**

Arnold was arrested by a deputy United States marshal without having a warrant. Such warrant, however, was in the hands of the marshal. No greater force was used in the arrest than would have been necessary had the capias been in possession of the deputy. In action for damages by Arnold against the marshal for false imprisonment, *Held*, that no legal ground for damages existed, and that the irregular mode of arrest did not affect the authority of the marshal to make the arrest, or cause it to be made...................................................... 107

Error to Court of Civil Appeals for Second District, in an appeal from Palo Pinto County.

Justice STEPHENS being disqualified, did not sit in the case in the Court of Civil Appeals.

*A. T. Watts,* for plaintiffs in error.—A valid warrant commanding the arrest of a party being in the hands of the United States marshal, and his deputy being informed of that, and directed by him to make the arrest, and does so, explaining at the same time to the party that the warrant was then in the hands of the marshal, and the party submitting to the arrest, making no objection on that account, such party has no right of action against the marshal and his sureties for illegal arrest.   Griffin v. Coleman, 4 H. & N., 265;  Bowditch v. Balchin, 5 Exch., 380;  Beckwith v. Philby, 6 B. & C., 634;  Lawrence v. Hedger, 3 Taunt., 14;  Davis v. Russell, 5 Bing., 354;  Martin v. The State, 40 Texas, 19;  Guernsey v. Lovell, 9 Wend., 319;  Allen v. Leonard, 28 Iowa, 529;  Hall v. O'Malley, 49 Texas, 70;  Meeds v. Carver, 8 N. C., 298.

*B. C. Bidwell,* for defendant in error.—A warrant for the arrest of appellee being in Dallas, Texas, did not authorize his arrest in Palo Pinto County, Texas, by deputies who did not have the warrant with them when the arrest was made; and the fact that he was told that such a warrant had been issued will not defeat his action for an illegal arrest.   Code Crim. Proc., arts. 226, 231; 5 Texas Cr. App., 43; 8 Texas Cr. App., 545; 80 Texas, 608; 35 Fed. Rep., 116; 1 Am. and Eng. Encycl. of Law, 740, note 1; 37 Mich., 299; 4 H. & N., 265; 22 Mich., 265, 269; 9 N. H., 491; Cool. on Torts, 169, title " False Imprisonment;" Bath v. Metcalf, 14 N. E. Rep., 133.

The code of Texas expressly provides in what cases an arrest without a warrant may be made, and in article 231 of the Code of Criminal Procedure it is provided, that when an arrest is made without a warrant the officer who makes it shall take the person arrested before the nearest magistrate, etc.

Section 1014 of the Revised Statutes of the United States declares who may cause the arrest of offenders against the laws of the United States. Among those named are justices of the peace and other State officers, who may imprison or bail the accused, and the proceedings are to be had agreeably to the laws of the State.

Article 788 of the Revised Statutes of the United States provides, that United States marshals and their deputies shall have in each State the same powers in executing the laws of the United States as the sheriffs and their deputies in such State may have by law in executing the laws of the State.

Under these provisions of the law there was no reason why a warrant could not have been procured in Palo Pinto County, especially as the marshal and his deputies were the only actors in procuring the arrest.   It

can not escape the attention of the court that no witness was ever called to testify against Arnold; no effort was made to show that he was in any way connected with the robbery for which he was arrested, nor was it in any way shown or attempted to be shown that there was reasonable ground to suspect that he was guilty. If the officer had authority to arrest Arnold without a warrant, it was then clearly his duty to take him before the nearest justice of the peace or other officer named in the United States statutes. This was not done, but Arnold was denied the right to give bail at home, and was carried to Dallas, and there placed in jail as a common felon. If the original arrest was wrongful, those who made it are answerable to Arnold for his subsequent detention. Bath v. Metcalf, 14 N. E. Rep., 133.

It would seem that the learned counsel for appellants is hardly serious in contending that Arnold can not now recover for a wrongful arrest because he did not resist the officers. 35 Fed. Rep., 116; Cool. on Torts, 169.

This is a suit for false imprisonment, which is very different from one for malicious prosecution. 2 Am. St. Rep., 559; 9 Am. St. Rep., 735; 35 Ind., 285.

Plaintiff sues for actual damages alone; pain and mental anxiety and suffering are such. 66 Texas, 580; 98 U. S., 266.

That Cabell acted in good faith in making an affidavit for a warrant can not prejudice the rights of Arnold. There is no mitigation of actual damages. 1 Am. St. Rep., 608; 1 Suth. on Dam., 227; 9 Ind., 105; 98 U. S., 266.

If the arrest could have been lawfully made without a warrant, then there should have been probable cause to suspect that Arnold was guilty. Not one single fact or circumstance is shown to fix the remotest suspicion on him. Probable cause is defined in the following cases: 45 Texas, 539; 64 Texas, 320; 22 Fed. Rep., 217; 24 How., 544.

Malice may be inferred from the want of probable cause. 60 Texas, 207; 62 Texas, 401; 64 Texas, 660; 65 Texas, 550.

The marshal is responsible for the wrongful acts of his deputy. 60 Texas, 445.

The court is respectfully urged to examine the case of Harris v. Railway, 35 Fed. Rep., 116, in which Hammond, J., has very clearly and forcibly declared the correct rule of law applicable to this case.

If it were conceded that the first arrest of Arnold without a warrant was justifiable, then the failure of the marshal to take proper and legal steps for his commitment or bail makes him a trespasser ab initio. 1 Smith Lead. Cases, 261, 274, 277.

STAYTON, CHIEF JUSTICE.—W. L. Cabell, as United States marshal, held a valid warrant authorizing the arrest of H. D. Arnold on a charge of felony under the laws of the United States.

That warrant was issued by a commissioner at Dallas, and delivered to Cabell, who remained in Dallas and retained the warrant, but by telegram . directed one of his deputies to go to Palo Pinto County and arrest Arnold and others named in the warrant.

The deputy and a special deputy made the arrest in Palo Pinto County, without any warrant being in their possession authorizing the arrest, and conveyed Arnold from the place where arrested to Dallas, and there delivered him to the marshal. Arnold was confined in jail one night, and then brought before the commissioner, by whom he was admitted to bail until final examination; upon which, after considerable delay, he was discharged.

This action was brought against Cabell and the sureties on his official bond to recover damages for false imprisonment, based on the proposition that the arrest and detention, until Arnold was placed under the control of the marshal, was illegal, because the deputies had not the writ in their possession at the time the arrest was made nor during the journey to Dallas.

The jury was instructed that the arrest and detention by the deputies without having the warrant in their possession was illegal, and that Arnold was entitled to recover for the arrest and detention until he was delivered to the marshal at Dallas, and under this instruction verdict and judgment went in his favor.

On appeal the same ruling was made by the Court of Civil Appeals, and from that decision writ of error is now prosecuted.

The arrest and detention all occurred within the district in which Cabell was marshal, and the material facts transpiring at the time are thus stated by Arnold: "Sisk (one of the deputies) then told me that they wanted me to go to Dallas, Texas; that General Cabell had telegraphed him to arrest me. They then told me that they would have to carry me. I asked them if they had any papers for my arrest. Sisk said he had none. They did not show me any, but Sisk said there were some at Dallas for me. Grimes (the other deputy) said, later on, that if ordered by Cabell he would arrest me as quick without a warrant as with one. I told them I had to go by home; they carried me by home and I got my clothes. I did not resist arrest. They carried me to Weatherford and carried me to Dallas."

No facts are shown which would have justified the arrest of Arnold without the issuance of a warrant, and we have the question whether, when a lawful warrant has been issued and placed in the hands of a marshal or sheriff, his deputy may make an arrest without having the warrant in his possession at the time, without subjecting his principal to liability in a civil action brought by the person arrested.

The determination of this question must depend upon the laws in force in this State prescribing the powers and duties of sheriffs and their deputies. U. S. Rev. Stats., sec. 788.

The sufficiency of the warrant that went into the hands of the marshal is not questioned, and the statutes bearing on the question of its proper execution provide, that all reasonable means are permitted to be used to effect it; that no greater force shall be used than is necessary to secure the arrest and detention of the accused; and that " in executing a warrant of arrest, it shall always be made known to the person accused under what authority the arrest is made, and if requested, the warrant shall be exhibited to him.''    Code Crim. Proc., arts. 255, 257.

When the Code of Criminal Procedure fails to provide a rule of procedure in any particular state of case which may arise, the rules of the common law must be applied and govern.   Code Crim. Proc., art. 27.

It will not be questioned that the deputies had the same power to arrest as had the marshal, under the same circumstances.

It has been held in England and in some of the courts of this country, that a person may use necessary force to resist arrest, in a case in which a warrant is necessary to authorize it, unless the officer at place and time he attempts to make the arrest has the warrant in his possession, and that such violence towards the officer will not constitute a battery or other like offense; and further, that the absence of the warrant may affect the grade of offense committed by violent resistance resulting in the death of the officer.    Galliard v. Laxton, 9 Cox C. C., 127; Codd v. Cabe, 1 Exch. D., 352; Reg. v. Chapman, 12 Cox C. C., 4;  People v. McLean, 36 N. W. Rep., 231;  Webb v. The State, 17 Atl. Rep., 113.

In these cases warrants existed which would have authorized an arrest.

In crimes such as assault, battery, or homicide the animus with which the act is done becomes an element of the offense, and it may very properly be held, when the arrest of a person is attempted without warrant, in a case in which warrant is necessary, resistance was under the belief that the act was an unauthorized interference with the right to personal liberty, which every person has the right to resist by the use of such force as is necessary.

In such cases the existence of the writ, if not present, ought not to deprive the person resisting arrest of right to act and base his belief upon the facts as they then appeared to him, and to have his intent when charged with crime determined thereby.

The cases referred to in general terms declare arrest illegal, in cases in which warrant is necessary, unless the warrant be in the possession of the officer at the time and place of arrest; but they were all criminal cases, in which the animus of the party resisting was a vital question.   It ought not to be denied that the law contemplates that the warrant directing the arrest of a person charged with crime will be in the possession of the officer when he makes an arrest under it; for he is required to exhibit it if called upon to do so; and this is based on a wise public policy, one purpose of which is, that the officer may have to exhibit such evidence of his author-

ity to make the arrest as will be deemed sufficient to take from the person whose arrest is commanded all right to question the authority of the officer.

Does it, however, follow from this that the absence of the warrant at the time and place of arrest, if in fact a valid warrant was in possession of the officer commanding him to make the arrest, will entitle the person arrested to maintain a civil action as for tresspass or false imprisonment?

The correct answer to this must depend upon a determination of the facts which confer authority on an officer to arrest a person charged with crime; for if the authority exists, an irregular exercise of it can not give cause for civil action, unless that irregularity or mode of execution be of character to work loss or deprivation of freedom of action to the person arrested which would not have followed arrest in every respect regular.

When it is said that arrest may be made without warrant, it is meant that the issuance of warrant is unnecessary; but as no facts are shown to have existed that would have authorized the arrest of Arnold without warrant, it is unnecessary to inquire when such arrests may be made.

The first fact necessary to confer authority on a sheriff or officer of like powers, in a case in which warrant is necessary, is the existence of a warrant, issued by some magistrate or court having power under the law to issue it, commanding him to make the arrest.

If the warrant be issued by such magistrate or tribunal, and be in the form prescribed by law, so far as the officer is concerned to whom it is directed, it must be treated as conclusive evidence that the preliminary facts were shown which authorized it to issue.

The next step is the delivery of the warrant to the person who is commanded to execute it, and when so delivered the officer's obligation and duty to obey its command becomes fixed, and it is clear that authority to do the act commanded must coexist with the obligation or duty.

These are the essentials which confer on a sheriff or like officer the authority to arrest on warrant; and so long as they continue operative the authority must exist.

The manner and circumstances of execution relate not to the authority, unless expressly or by necessary intendment made to; and if the law prescribes the mode of execution, this is either to secure the execution of the process or to guard the person whose arrest is commanded from unnecessary annoyance or oppression, and a departure in this respect ought not to affect the question of authority; but if legal injury results to the person arrested through departure from the procedure prescribed, this would give ground for civil action, but no legal injury could result if the officer, acting within the territory to which his duties pertain, uses no more force in executing a valid warrant than is necessary, and in other respects obeys the writ.

If an officer uses more force than is necessary to arrest and detain, he

becomes civilly liable in so far as would any other wrongdoer; and if he refuses to exhibit the warrant when called upon to do so, or to make known under what authority he assumes the right to arrest, he may thereby forfeit the right he would otherwise have to compensation for hurt received by force used in resisting arrest. State v. Phinney, 42 Me., 390.

If a person arrested should ask a court to discharge him on the ground that more force was used than necessary to arrest and detain him, on the ground that he was not informed at the time of arrest of the authority under which the officer was acting, or that the warrant was not exhibited to him on demand, no court would discharge him, if it appeared that the arrest was made under a valid warrant delivered to an officer authorized to execute it, who in person or by deputy had made the arrest.

This would follow, because the arrest and detention would be under the authority of law, and therefore legal.

" If the officer expressly declare that he arrests under an illegal precept, and on that only, yet he is not guilty of false imprisonment, if he had at the time a legal one; for the lawfulness of the arrest does not depend on what he says, but what he has. State v. Kirby, 2 Ind., 201; State v. Ehrod, 6 Ired., 251. Undoubtedly, if the jailor had discharged the plaintiff, the sheriff would have been liable for an escape on Jones' execution; for the jailor is the sheriff's deputy, and bound to take notice of the writs in the hands of his superior, and a detention is justified, if one by the sheriff himself would have been by the same process." Meeds v. Carver, 8 Ired., 98.

In the case before us, it is not shown that any act was done in arresting and detaining the plaintiff that would not have been strictly lawful had the warrant been in the possession of the deputies at time and place of arrest, nor does it appear that plaintiff suffered any loss, indignity, inconvenience, or deprivation of freedom which he would not have suffered had the warrant then been in their hands and every step in the procedure contemplated by the statute strictly followed; and under such circumstances we are of opinion that the charge of the court, to the effect that the warrant did not justify the arrest unless it was in possession of the deputies at time and place of arrest, was erroneous.

Authority to make the arrest existing, the manner in which that power was exercised ought not to be held ground for civil action, unless therefrom hurt resulted to plaintiff which would not necessarily have followed had the exact procedure contemplated by the statute been pursued.

Only one case has been found in which the rulings made in this case were sustained in a civil action based on like facts.

Such seems to have been the ruling of the Court of Errors and Appeals of New Jersey in case of Smith v. Clark, 21 Atlantic Reporter, 491; but the authorities cited in that case all had application to the question that arises

in a criminal case when a person is charged with assault, assault and battery, or homicide, growing out of force used in resisting arrest, which are not believed to be applicable to this case.

For the errors in the charge of the court, the judgments of the District Court and Court of Civil Appeals will be reversed and the cause remanded.

It is so ordered.

*Reversed and remanded.*

Delivered October 26, 1893.