**PATE v. STEVENS et al.**

No. 6615.

Court of Civil Appeals of Texas. Texarkana.

April 16, 1953.

Rehearing Denied May 14, 1953.

764

Wroe Owens and Samuel M. Amster, Austin, for appellant.

Ramey & Ramey, Sellers & Fanning and Wm. J. Fanning, Sulphur Springs, Thompson, Knight, Wright, Weisberg & Simmons and Pinkney Grissom, Dallas, for appellees.

LINCOLN, Justice.

This is an appeal from a summary judgment granted in favor of appellees, Dr. Thomas H. Stevens and Dr. W. Ray Hanna, defendants below. The appellant is a feme sole but was the wife of Bart C. Pate when the detailed events occurred. Their home was in Sulphur Springs, Hopkins County. At the time of the events alleged in the petition appellant averred that she was a resident of Dallas.

Appellant's petition is lengthy and replete with repetitions, indicating intention to allege some four or five different causes of action, but without attempt to set them forth in separate counts. Rule 50, Texas Rules of Civil Procedure.

Stripping the petition to its elemental nature, we find that appellant's suit is for damages for false imprisonment and malicious prosecution, predicated upon the fact that each of appellees, practicing physicians

in Sulphur Springs, signed separate statements bearing date July 30, 1949, the statement signed by appellee Dr. Stevens reading: "On this 30th day of July, 1949, personally appeared in open court, Doctor Thomas H. Stevens, whose address is Sulphur Surings, Texas, who being by me duly sworn deposes and says, that he is a licensed physician, authorized by law to practice medicine in the State of Texas, that he is not on the staff of any Texas State Hospital, and that he has examined the person alleged to be mentally ill, to-wit: Louise Pate, within the preceding five (5) days of this hearing, and that in his professional opinion such person is mentally ill, is neither feeble-minded, an idiot, an imbecile, nor epileptic, and that in his opinion the welfare of said person and/or others requires that such person should be temporarily committed for observation and/or treatment to some hospital authorized by law to care for and treat mentally ill persons as provided by law."

On the same date appellee Dr. W. Ray Hanna signed a like statement. Appellant alleges that the statements were false wherein it is stated that the doctors had examined Mrs. Pate within the preceding five days. She alleges a conspiracy on the part of her husband and the two doctors to bring about a wrongful and malicious prosecution of plaintiff and to have her incarcerated because she had notified her husband she was going to file for a divorce; that the defendants had not examined her within the preceding five days, that she was in Dallas County and not in Hopkins County during said time, that the doctors did not appear before the county judge, and did not sign and swear to the statements before the county clerk as his fiat shows; that defendants knew when they signed the statements that the result would be that she would be incarcerated as a person of unsound mind; that in consequence of all which she was taken in custody by officers and placed in the Austin State Hospital, where she was held in confinement from August 1 to October 26, 1949. Malice and want of probable cause are frequently alleged. There is no allegation that either of the two defendants took any part in her arrest or confinement, except as to the statements made by the doctors and the allegations of conspiracy.

From a careful study of the petition, the briefs of the parties, the authorities, and the evidence presented at the hearing on the motion for summary judgment, we do not think a cause of action for false imprisonment appears. From that evidence, consisting of affidavits and depositions, the following undisputed facts were shown:

Bart C. Pate, plaintiff's husband, appeared before Hon. Wayne Gee, County Judge of Hopkins County, on July 29, 1949, and after conference between the two, Pate signed and swore to a complaint before the county judge, who filed it on that date, alleging that appellant, not charged with a criminal offense, "is believed by affiant to be mentally ill, and the welfare of herself and/or others requires that she be observed and/or treated in a hospital for the mentally ill, as provided by law for a period not exceeding ninety (90) days."

On July 30, 1949, Pate took the statements to the two doctors for their signatures. Whether they were already filled out or whether the doctors completed them is not shown, but they each signed one as copied above, and returned them to Pate, who delivered them to the county judge. The defendants did not swear to the statements, and did not appear at the hearing. Neither of them had seen Mrs. Pate for some weeks, at least.

On July 30, 1949, the county judge made and signed the following order: "This the 30th day of July, 1949, came on to be heard the question of the mental illness of Louise Pate and the said Louise Pate appearing in open court in person and the court having heard evidence in said matter and the testimony of Dr. W. Ray Hanna whose address is Sulphur Springs, Texas, and Dr. Thomas H. Stevens whose address is Sulphur Springs, Texas, being two reputable physicians, authorized by law to practice medicine in the State of Texas, and neither of whom is on the staff of any Texas State Hospital, as to the mental illness of said person, and as to the welfare of herself, and others, finds that such person is not charged with a criminal offense, is neither feeble-

minded, an idiot, an imbecile, nor an epileptic, is mentally ill and the court finds that the welfare of said person and/or others requires that such person should be temporarily committed for observation and/or treatment to a hospital authorized by law to care for and treat mentally ill persons, as provided by law, for a period of not to exceed ninety (90) days.

"It is therefore ordered that the said Louise Pate be and she is hereby temporarily committed to Austin State Hospital as provided by law, being a hospital authorized by law to receive, care for and treat mentally ill persons, for a period of not to exceed ninety (90) days from and after the date hereof, for observation and/or treatment, and at the expiration of which said ninety (90) day period this order shall be and become of no further force and effect."

The affidavit of the county judge indicates that Pete was present at the hearing and testified. The judge, Hon. Wayne Gee, told Pate he would sign the order committing Mrs. Pate for ninety days, but it would not be effective, placed of record, or commitment delivered until he had heard the evidence of Dr. John W. Pate, a physician of West Texas, and son of Mr. and Mrs. Pate. On July 31, Dr. Pate appeared and testified before the county judge that in his opinion his mother was mentally ill and had been for some years past; that she had refused treatment; that it was his definite opinion that she needed treatment and should be committed to an institution for the mentally ill. After this evidence the county judge entered his order and released to the sheriff the following commitment: "You are hereby directed that you take into your custody the person of Louise Pate of Hopkins County, Texas, who has been found to be mentally ill by the County Court of said Hopkins County, Texas, and her safely convey to the Austin State Hospital and there deliver her to the Superintendent of said Hospital and take his receipt for her. If a woman, insert: for the purpose of conveying said person, being a woman, I hereby designate ——— as an attendant to accompany her to said hospital."

In obedience to the commands of the foregoing writ, the sheriff of Hopkins County and his deputy went to the home of the Pates on Monday morning, August 1, and took Mrs. Pate in custody. She was taken to Austin State Hospital and delivered to the institution that day, having been accompanied on the trip by her son, Dr. Pate.

■■ The affidavit or complaint made by Pate, which was the beginning of the prosecution, is entirely regular on its face, as are also the order of commitment, and the commitment itself. The County Court, presided over by the county judge is a court of competent jurisdiction in Texas over insanity proceedings and proceedings for hearings and commitments for temporary confinement, treatment and observation of the mentally ill, under Art. 3193 et seq., Vernon's Ann.Civ.St. of Texas. The distinction between an action for false imprisonment and that for malicious prosecution has been clearly defined. Hubbard v. Lord, 59 Tex. 384; Cabell v. Arnold, 86 Tex. 102, 23 S.W. 645, 22 L.R.A. 87; Warwick v. First State Bank of Temple, Tex.Civ.App., 296 S.W. 348; American Motors Finance Co. v. Cleckler, 28 S.W.2d 274, 275; 4 Tex.Jur., p. 767, 35 C.J.S., False Imprisonment, § 27, p. 532. In passing on this question in American Motors Finance Co. v. Cleckler, supra, the Eastland Court of Civil Appeals said: "It will be noted that the petition alleged that appellee was arrested under the authority of a warrant issued by a magistrate, and that the complaint, which was made the basis of the warrant, charged appellee with a felony. These allegations, we think, clearly classify appellee's cause of action as one for malicious prosecution." The evidence on the motion for summary judgment in this case showed similar facts as to the complaint and warrant, except that the charge was mental illness instead of a felony.

■ The foregoing authorities, and many others, hold that an arrest under a warrant valid in form, issued by competent authority on a sufficient complaint is not false imprisonment. By "competent authority" to issue such warrant the reference is to the matter of jurisdiction; and that means jurisdiction of the subject mat-

ter. Such authority back of a warrant legal on its face is sufficient justification for the arrest even though the proceedings back of its issuance were irregular, or void, or that the court did not have jurisdiction of the person of the defendant. 11 R.C.L. p. 796, Sec. 9. To the same effect see 22 Am.Jur., p. 400, § 67.

The facts detailed disclose that appellant was arrested upon a writ issued by the county judge. The writ and all other proceedings show upon their face to be valid in all respects. Under these circumstances there was no false imprisonment of appellant.

The charge of conspiracy does not aid her case on this count. The appellees did not accompany the officers when they carried appellant to Austin. Her arrest and detention, as shown by all the evidence, were by officers of the law under the authority stated. They did no legal wrong, and appellant would not be entitled to damages against appellees for arrest and imprisonment by the officers that are lawful. It follows that the action of the trial court in granting summary judgment for appellees on the asserted claim of false imprisonment was not error, and appellant's points on this phase of the appeal are overruled. It might be stated here by way of further clarification that none of the arresting officials were sued, nor Pate, nor the county judge, only the two doctors, appellees here.

Essential elements in a case of malicious prosecution are malice and want of probable cause. Suhre v. Kott, Tex. Civ.App., 193 S.W. 417; McManus v. Wallis, 52 Tex. 534; Breneman v. West, 21 Tex.Civ.App. 19, 50 S.W. 471, writ refused.

An action for malicious prosecution may be predicated upon a complaint which falsely and maliciously and without probable cause charges a person with being of unsound mind, Lindsay v. Woods, Tex. Civ.App., 27 S.W.2d 263.

Section 1 of Article 3193o–1, V.A.C.S., under which the proceedings above set out were had, provides that "If information in writing and under oath be given to any County Judge that any person in his county who is not charged with a criminal offense, is believed to be mentally ill, and that the welfare of himself and/or others requires that he be placed in a State hospital for the mentally ill for not exceeding ninety (90) days for observation and/or treatment, and such County Judge shall believe such information to be true, he shall forthwith, in termtime or vacation, fix a day and place for the hearing and determining of the matter * * * and shall give notice to such person of the time and place of such hearing." The County Judge stated by affidavit attached to the motion for summary judgment that what Pate told him caused him to believe "there might be some truth in his (Pate's) belief that she was mentally ill," and he accepted the complaint. It was filed and docketed "The State of Texas v. Louise Pate, No. 6094." Notice to the defendant in that case was issued, complying with the foregoing statute, but no service on her was shown.

The statute further provides:

"If, upon the hearing of such matter, two (2) reputable physicians authorized by law to practice medicine in the State of Texas, neither of whom is on the staff of any Texas State Hospital, and each of whom has examined the person alleged to be mentally ill within the preceding five (5) days of said hearing, shall swear that in each of their professional opinions such person is mentally ill, is neither feebleminded, an idiot, an imbecile, nor an epileptic, and that in his opinion such person should be temporarily committed for observation and/or treatment * * * he shall so state in his order of commitment which shall be entered upon the minutes of said Court and a writ of commitment issued thereupon committing said person temporarily for observation and/or treatment to some State hospital authorized by law to care for and treat mentally ill persons."

Chapter 2 of Title 51, V.A.C.S. of Texas, is a comprehensive enactment providing for confinement and treatment of insane persons and persons alleged to be

mentally ill. A clear distinction is made between the two classes of persons. Arts. 3193–3193o concern insane persons. Art. 3193o–1 concerns only persons alleged to be mentally ill. Certificates by two licensed and qualified physicians are provided for in each instance. In the case of insanity, there is no requirement as to what the certificate shall contain, except it shall be a certificate of insanity upon a form prescribed by the State Board of Control. The statute contains no requirement that an examination must have been made within a certain period of time. Provision is also made for a jury trial.

Art. 3193o–1 is a statute governing temporary commitment of persons alleged to be mentally ill. No jury is provided for. The purpose of this statute is to provide for observation and treatment of such person for a limited time.

Clearly, then, the certificates of two physicians are for the sole and only purpose of informing the county court as to whether, in the opinions of the physicians, the person in question is insane or is mentally ill. The mental condition of such person is the object which calls into exercise the power of the court. The certificates of physicians are not intended to relieve the county court of the duty to hear further evidence.

We are here concerned with whether, at the time the statements of appellees were made and filed in the court, appellees were of the professional opinion that Mrs. Pate was then mentally ill, this mental condition being the important issue before the County Court. In addition to the opinions of appellees, the court had before it the testimony of her husband, Bart Pate, and her son, Dr. Pate, each of whom supported the opinions of the doctors.

Did appellees have probable cause for believing Mrs. Pate was mentally ill? Dr. Hanna, testifying by deposition, stated that he had known Mrs. Pate since 1936 or 1937; that he had been in the home of the Pates in Sulphur Springs, visited them socially, played bridge with them; that he had treated her professionally for minor ailments; that he had lived in Sulphur Springs since 1941, practicing his profes-

sion after graduating from the Medical School of Baylor University, and during that time he had seen her frequently; that he had been associated with Dr. Frankie Long, now deceased, who was the long-time family physician of the Pates, and that Dr. Long had informed him that Mrs. Pate was mentally ill and needed treatment; that he also knew Dr. Guy Witt, a psychiatrist of Dallas, had examined her and he knew that Dr. Witt's opinion was that she was mentally ill; that he had talked with Dr. Pate, appellant's son, about the matter, that Dr. Pate had told him his opinion was that his mother was mentally ill, had known it for years, and had requested him to make the certificate in question; that he (witness) had had the opinion for years that she was mentally ill, arrived at from what he had seen and from the other facts stated; that in his opinion she has the paranoid type of mental illness.

Appellee Dr. Thomas H. Stevens testified by deposition that he had known Mrs. Pate since 1945; that he became the family physician after the death of Dr. Frankie Long in 1945; that he had treated Mrs. Pate for various minor ailments; that about a month previous to his statement in question she had come to his office, in June or July, 1949; that he had discussed her mental condition with her husband and her son, Dr. Pate, both of whom were of the opinion she was mentally ill and needed treatment; that he had been of this opinion since 1946 or 1947; that about a year before the commitment was issued Dr. Pate talked to him a long time about his mother; that Mrs. Pate had paranoid tendencies, and that such condition had increased from 1945 to 1949.

The record contains lengthy depositions of doctors and officials of the Austin State Hospital, and of Dr. Wade of Austin. Each of them is shown to possess qualifications for their respective positions. The records of the Austin Hospital show that on September 6, 1949, appellant appeared before the staff of the State Hospital, and that the general diagnosis of appellant was "Psychoneurosis, anxiety type." The individual opinions of Drs. Ramsdell, Hanus,

Simpson and Currie, of the Hospital Staff, as shown by such records, was that Mrs. Pate's mental condition was "dementia praecox, paranoid type (agitated)." Dr. Fain considered hers was a "paranoid condition." Dr. Spencer considered it "manic depressive, manic type."

On October 11, 1949, appellant was again before the Hospital Staff, and the records show that the general diagnosis at that time was "manic depressive, manic type, paranoid tendencies." Drs. Currie and Fain announced it "paranoid condition," and Dr. Ramsdell "dementia praecox, paranoid type." Dr. Ramsdell was then Superintendent of the Austin State Hospital. He shows to possess superior qualifications as a psychiatrist, and had extensive experience in that field. He testified by deposition that the diagnosis, as shown by the records above stated, in his opinion were correct; that "basically we could accept the diagnosis of manic depressive psychosis, manic type with paranoid tendencies"; that appellant "has paranoid ideas * * * She is hyperactive physically. She also has an underlying paranoid condition. What is seen basically is this abnormal emotionality, this increased emotionality which gives rise to the basic diagnosis of manic depressive psychosis, manic type."

Dr. Ramsdell's testimony discloses that his opinion and findings were derived from Mrs. Pate's appearance before the Hospital Staff, and from the history of her case as it appears in the hospital records, with particular reference to a statement in this record by Dr. John Pate and his brother. From all which he testified that at the time Louise Pate came to the Austin State Hospital, "it is my opinion she was mentally ill."

Dr. David Wade is clinical director and psychiatrist in chief for Oak Ridge Sanitarium, a private psychiatric hospital in Austin. He is shown to possess superior qualifications by training and experience in nervous and mental diseases. At request of Dr. John Pate he made examinations of appellant while she was in the State Hospital, on September 16, and about October 19, 1949. His diagnosis was that she "was suffering from a manic depressive type of psychosis," a condition "super-imposed on a more serious mental illness, that of paranoid state or paranoid schizophrenia." He testified that "Mrs. Pate was definitely mentally ill." Dr. Wade further stated that the condition of Mrs. Pate as he found it existed in July and August, 1949, "and many years prior thereto." Such evidence is presented here, not to show mental illness in fact, but as it relates itself to the issue of probable cause existing at the time appellees made their challenged statements.

From all the foregoing facts we think it was definitely shown that appellees each had probable cause for believing and stating that on July 30, 1949, appellant was mentally ill, and that in their opinions her welfare "and/or others require that such person should be temporarily committed for observation and/or treatment" to a State Hospital. In Wheeler v. Nesbitt, 24 How., U.S., 544, 16 L.Ed. 765, probable cause was defined as "the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime (or, in this case, of mental illness) for which he was prosecuted." This definition was approved and adopted in Ramsey v. Arrott, 64 Tex. 320, and in Aldana v. Tavazon, Tex.Civ.App., 15 S.W.2d 678. See 28 Tex.Jur., p. 462, Sec. 9; 54 C. J. S., Malicious Prosecution, § 26, p. 982. One relying upon probable cause as a defense in malicious prosecution may do so, of course, on facts within his own knowledge; but he may also rely upon information derived from others, 54 C. J. S., Malicious Prosecution, § 30a, p. 988, especially if such information comes from those who have had opportunities to know, Van Sant v. American Express Co., 3 Cir., 158 F.2d 924, comes from a credible source, Prostick v. Vroom, 129 N.J.Law 465, 29 A.2d 857; Hughes v. Van Bruggen, 44 N.M. 534, 105 P.2d 494, and is accepted by the prosecutor in good faith and he believes such information to be true, acting as a reasonably prudent

person would under the facts and circumstances. In such case it is immaterial that the facts presented to him by another may not be true, or that his informant acted unreasonably in making the disclosures, Campbell v. Yellow Cab. Co., 3 Cir., 137 F.2d 918; Van Sant v. American Express Co., supra. Measured by these tests, we think the evidence overwhelmingly shows that appellees had probable cause for believing that appellant was mentally ill, and that her welfare and the welfare of others required that she be committed temporarily for observation and treatment.

Appellant does not seriously dispute the facts stated. On the question of probable cause for appellees' opinions of mental illness there is no contrary evidence. But appellant urges that, as to probable cause, the suit for malicious prosecution may be maintained on the statements of appellees that they, respectively, had each examined appellant within the preceding five days, which statements were admittedly untrue, and that the statute requires such examination preliminary to commitment. We think the statute does not so require. Art. 3193a provides that "No person shall be committed to any institution for the treatment of the insane and other mentally ill persons, unless there has been filed with the county judge a certificate of the *insanity* of such person by two properly qualified and licensed physicians," etc. But, as will be seen, that section applies to proceedings in lunacy only, and the statute makes no other requirement than that the certificates of the physicians shall show insanity.

Under Art. 3193*o*–1 no such peremptory language is used. On the contrary, this statute provides that "If, upon the hearing of such matter [temporary commitment for mental illness], two (2) reputable physicians authorized by law to practice medicine in the State of Texas * * * and each of whom has examined the person alleged to be mentally ill within the preceding five (5) days of said hearing, shall swear that *in each of their professional opinions* such person is mentally ill * * and that in his opinion such person should be temporarily committed for observation and/or treatment to some State hospital authorized by law to care for and treat mentally ill persons," etc. Thus, it is obvious that the real purpose of the Legislature in the enactment of Art. 3193*o*–1 was to obtain professional opinions of two persons qualified to give them that the person charged was mentally ill and required observation and treatment in a state hospital. It is not required that they shall certify to or swear that they have examined the person within the preceding five days, nor that the person charged is in fact mentally ill. The county judge may reject the affidavits of the doctors and, regardless of their statements, hold that the person is not mentally ill. In fact the affidavits are not a necessary prerequisite to the adjudication by the county judge. He may require further evidence, and in this case that was done. It was the duty of the county judge to satisfy himself that, when such affidavits appeared, they were made by doctors who had made the examination within the preceding five days. In this case he knew such had not been done, he knew Mrs. Pate was in Dallas during that period of time. The statements of appellees in this respect did not mislead the county judge. The judgment entered by him made no reference to the five-day examination. The appellees signed the statements at his request, and he furnished the blanks for that purpose.

We are not to be understood as viewing with approval or even lightly the statement made by appellees, when they said they had each examined appellant within the preceding five days when they had not done so. Appellees appear in this record to be eminent and reputable physicians, and we think they are. No doubt they were actuated by the laudable purpose to aid treatment of an unfortunate person. The wording of the instrument they signed is printed except as to dates and names. They probably considered its signing as a mere formality without realizing the implications to follow. The error, in our opinion, is in no sense chargeable to insincere or sinister motive. But regardless of the falsity of that particular statement, appellant's case does not rest upon

it, for the fact remains that there was probable cause for appellees' opinions that, at that very time, appellant was mentally ill and that she needed the treatment afforded by one of our State Hospitals. That was the real issue before the court. The existence of probable cause is a question of law for the court from the facts shown. Reed v. Lindley, Tex.Civ.App., 240 S.W. 348. The action of the trial court involves the conclusion that probable cause existed, and we agree with the trial court on that question.

To sustain liability for malicious prosecution, want of probable cause and malice of the defendant in the case must concur. 28 Tex.Jur. p. 457, § 8, 54 C. J. S., Malicious Prosecution, § 19, p. 974. Absence of either is fatal to the case. We think the evidence affirmatively shows that appellees were not moved by any malice in making the statements referred to. They were friends to the Pates. They were urged by appellant's son to give aid in the matter. They had no wilful purpose or intent to do appellant an injury. They are shown to have had no ill will toward Mrs. Pate, or that they acted in reckless disregard of her rights. They appear to have acted only in what they believed to be the public good and the welfare of Mrs. Pate. All the evidence so shows, and there is none to the contrary.

The trial court sustained appellees' special exception to an allegation in her petition reading "at which time (October 26, 1949) she obtained a jury trial, which trial resulted in a verdict to the effect that plaintiff was of sound mind." Appellant challenges this action of the trial court. The ruling, even if erroneous, which we do not decide, has no relevancy to the issues of want of probable cause and malice of appellees. The ruling is therefore harmless, and presents no error.

Appellant urges that the judgment of the county court is void in that appellees did not swear to their statements, did not appear in open court to make them, and that appellant was not present at the hearing, each of which is contrary to the recitals in the judgment. There is no more profound obligation upon a court than to sit in judgment over the life or liberty of a citizen. It is no less so that the person being adjudged is charged with the great affliction of an unsound mind or mental illness. The irregular procedure pointed out was not justified by any emergency then existing, so far as the evidence shows. The county judge was probably impressed seriously with the belief that appellant was in need of the treatment afforded by our State Hospital, and that he permitted his zeal to provide such treatment, under the influence of appellant's son, to override the formalities provided by law. While we do not condone his action, neither do we imply that he was actuated by any wrongful motive.

Nevertheless, we are not trying the county judge. He is not a party to the suit. Appellees had nothing to do with the manner in which he disposed of the charge in his court. That was his responsibility. In view of the issues discussed and decided by us, it is not necessary to a disposition of this appeal to determine if the judgment of the county court is subject to the collateral attack as here made.

Summary judgment is the proceeding provided by Rule 166–A where, after a hearing, no issue of fact appears which should be submitted to a jury. Stated another way, if after such hearing the evidence is such that, on a trial on the merits before a jury a peremptory instruction for the movant would be necessary on the same facts presented, then the movant is entitled to the summary judgment. Arlington Heights Appliance Co. v. Gordon, Tex.Civ.App., 244 S.W.2d 337. Since the evidence affirmatively shows that there was probable cause for the statements made by appellees, and that they were not actuated by malice or any ulterior motive, and since there is no evidence to the contrary, there is no issue of fact raised on either of the two essential elements of malicious prosecution, and the summary judgment for appellees was proper.

Accordingly, the judgment of the district court is affirmed.