## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-41212

United States Court of Appeals
Fifth Circuit

**FILED**
June 5, 2019

Lyle W. Cayce
Clerk

GERMAN HERNANDEZ NAJERA,

> Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, BARKSDALE, and HO, Circuit Judges.

JAMES C. HO, Circuit Judge:

German Hernandez Najera, a foreign national from Honduras, claims that he was falsely imprisoned by federal immigration authorities. The district court entered summary judgment for the United States. We affirm.

I.

Najera first entered the United States in 1998. He received Temporary Protected Status (TPS) in 2000.[1]

---

[1] TPS allows eligible persons from certain countries designated by the Secretary of Homeland Security to live and work temporarily in the United States, due to certain conditions in their home country such as ongoing armed conflict and environmental disaster. 8 U.S.C. § 1254a. *See also* 6 U.S.C. § 557 (transferring authority to designate TPS from the Attorney General to the Secretary). The Secretary first granted TPS to Honduras in 1999

No. 17-41212

In 2012, Najera left the United States, without permission from federal immigration authorities, to visit his parents in Honduras. He returned to the United States about seven months later, at a place other than one designated by the Secretary of Homeland Security. At that time, Border Patrol agents arrested him and sent him to the McAllen Border Station for further processing. There, Customs and Border Protection (CBP) issued a warrant of arrest and notice to appear and served Najera with these documents while he was in custody. *See* 8 C.F.R. § 287.5(e)(2) (listing the immigration officers, including certain CBP officers, authorized to issue arrest warrants). CBP charged Najera with being illegally present in the United States, subject to removal, under § 212(a)(6)(A)(i) of the Immigration and Nationality Act.

CBP held Najera from the time of his initial arrest until his transfer to the custody of Immigration and Customs Enforcement (ICE) on June 17, 2013. ICE held Najera in custody for twenty-three days, while awaiting confirmation that Najera's criminal history was clear and that his TPS was still current. On July 10, 2013, ICE released Najera with instructions to report to the ICE office in Fairfax, Virginia, on July 31, 2013. ICE filed the notice to appear with the Arlington Immigration Court in Arlington, Virginia, on July 12, 2013—two days after his release.

Najera filed this suit in the Eastern District of Virginia under the Federal Tort Claims Act (FTCA), claiming, *inter alia*, false imprisonment. The court transferred the claims arising out of the events that took place in Texas to the Southern District of Texas, where the district court granted summary judgment to the United States on all claims.

---

after the devastation wrought by Hurricane Mitch. *See* Designation of Honduras Under Temporary Protected Status, 64 Fed. Reg. 524-02 (Jan. 5, 1999). TPS for Honduras has been extended continually through January 2020. *See* Termination of the Designation of Honduras for Temporary Protected Status, 83 Fed. Reg. 26074-01 (June 5, 2018).

No. 17-41212

Najera appeals only his false imprisonment claim. On appeal, the United States argues that the district court lacked jurisdiction to review Najera's false imprisonment claim under both 8 U.S.C. §§ 1252(g) and 1226(e). Alternatively, the United States urges that we affirm on the merits of Najera's claim. For the reasons detailed below, we disagree with the government's jurisdictional arguments, but we agree that Najera's claim lacks merit.

## II.

The government first argues that § 1252(g) precludes jurisdiction in this case. We disagree. This section states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). As Najera notes, this court has held that "removal proceedings commence when [ICE] files the appropriate charging document with the immigration court." *DeLeon-Holguin v. Ashcroft*, 253 F.3d 811, 815 (5th Cir. 2001). Here, ICE filed the charging document—the notice to appear—with the Arlington Immigration Court on July 12, 2013—two days *after* Najera's release from his allegedly false imprisonment. The government does not offer a theory for distinguishing *DeLeon-Holguin*, and we are aware of none. Accordingly, we conclude that § 1252(g) did not strip the district court of subject matter jurisdiction.

The government next argues that the district court lacked jurisdiction under § 1226(e) to hear this case. Again, we disagree. Section 1226(e) generally bars jurisdiction in cases challenging the Attorney General's discretionary judgment to detain aliens pending removal proceedings:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under

No. 17-41212

this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). The Supreme Court has construed § 1226(e), however, to permit constitutional challenges to statutes authorizing the detention of aliens. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."). And in a plurality opinion, the Supreme Court has construed § 1226(e) to permit statutory challenges as well. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (Alito, J., joined by Roberts, C.J., and Kennedy, J.) ("First and foremost, they are challenging the extent of the Government's detention authority under the 'statutory framework' as a whole. If that challenge fails, they are then contesting the constitutionality of the entire statutory scheme under the Fifth Amendment. Because the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision,' respondents' challenge to 'the statutory framework that permits [their] detention without bail,' falls outside of the scope of § 1226(e).") (citation omitted) (quoting *Kim*, 538 U.S. at 517).[2]

This court has likewise held that § 1226(e) "does not deprive us of all authority to review statutory and constitutional challenges." *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005). Here, Najera contends that his detention violates the federal TPS statute—which provides that federal immigration authorities "shall not remove the alien from the United States during the period in which such status is in effect." 8 U.S.C. § 1254a(a). Once again, the government does not offer a theory for distinguishing *Oyelude*, and

---

[2] In *Jennings*, Justice Breyer, joined by Justices Ginsburg and Sotomayor, dissented on the ground that, unlike the plurality, they would have granted the relief sought by plaintiffs—suggesting that they agreed with the plurality that the district court properly exercised jurisdiction to decide the case. 138 S. Ct. at 859 (Breyer, J., dissenting).

we are aware of none.  Accordingly, we conclude that § 1226(e) did not strip the district court of jurisdiction.

## III.

We turn next to the merits of Najera's false imprisonment claim.  We review a grant of summary judgment *de novo*.  *Pierce v. Dep't of the Air Force*, 512 F.3d 184, 186 (5th Cir. 2007).  When a plaintiff files an FTCA claim, the federal government waives sovereignty for suit "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  We have interpreted "[t]he law of the place" to mean the law of the state where the tort took place.  *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995) ("[T]he liability of the United States under the [FTCA] arises only when the law of the state would impose it.") (quoting *Brown v. United States*, 653 F.2d 196, 201 (5th Cir. Unit A Aug. 1981)).  In this case, we apply Texas law.

In order to establish a valid false imprisonment claim under Texas law, Najera must show:  "(1) willful detention, (2) without consent, and (3) without authority of law."  *Davila v. United States*, 713 F.3d 248, 262 (5th Cir. 2013) (quoting *Martinez v. English*, 267 S.W.3d 521, 629 (Tex. App.—Austin 2008, pet. denied)).

"The plaintiff must prove the absence of authority in order to establish the third element of a false imprisonment cause of action."  *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 376 (Tex. 1985).  "It is a complete defense to an action for false imprisonment that the arrest or detention was by virtue of process, legally sufficient in form, and duly issued by a court or official having jurisdiction to issue it."  *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 248 (Tex. Civ. App.—Texarkana 1975, writ ref'd n.r.e.).  A facially valid warrant is a defense to a claim of false imprisonment even if the events that led to its issuance were "irregular, or void, or that the court did not have jurisdiction of

## No. 17-41212

the person of the defendant." *Pate v. Stevens*, 257 S.W.2d 763, 767 (Tex. Civ. App.—Texarkana 1953, writ dism'd) (citation omitted).

The district court correctly determined that the Border Patrol and ICE agents acted with authority of law. Najera illegally entered the United States, and Border Patrol agents lawfully apprehended him at that time. Najera's signature appears on both the arrest warrant and notice to appear issued by CBP prior to his detention. In light of these undisputed facts, Najera did not meet his burden to show that the Border Patrol and ICE agents lacked authority of law to arrest and detain him.

\* \* \*

For these reasons, we affirm.